**Capt. John Paul JORDAN, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, Administrator, Fixed Pension Plan for Seaboard World Airline Pilots, Flying Tiger Line, Inc. Variable Annuity Pension Plan for Pilots, Federal Express Corporation Employees' Pension Plan, Defendants.**

Civil Action No. 94–0930.

United States District Court, W.D. Pennsylvania.

Jan. 18, 1996.

16, 1995, orders. Nor has it sought costs for the time its attorneys spent at the sanctions hearing.

Ronald G. Backer, Rothman Gordon, Pittsburgh, PA, Daniel M. Katz, Katz and Ranzman, Washington, DC, for plaintiff.

James P. Hollihan, Robert J. Waine, Manion, McDonough and Lucas, Pittsburgh, PA, Elizabeth C. Smith, Federal Express Corporation, Memphis, TN, for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

Before the Court are Plaintiff's Motion for Summary Judgment and for Injunctive, Declaratory and Monetary Relief (Document No. 13) and Defendants' Motion for Summary Judgment (Document No. 16). The parties have submitted comprehensive memoranda, affidavits, and extensive documentary material in support of their motions.

### Background

Capt. John Paul Jordan, plaintiff, was employed continuously as an airline pilot from May 1965 until his disability retirement in 1989. His career began with Seaboard World Airlines, Inc. ("Seaboard") where, in the 1960s, he became a participant in its Fixed Pension Plan for Seaboard World Airline Pilots (the "Seaboard Plan"), a defendant. Following Seaboard's acquisition by and merger with Flying Tiger Line, Inc. ("Flying Tiger"), plaintiff also became a participant in the Flying Tiger Line, Inc. Variable Annuity Pension Plan for Pilots ("Flying Tiger Plan"), also a defendant.[1]

Sometime after July 1989, defendant Federal Express Corporation ("Fed Ex") acquired Flying Tiger, and the defendant Federal Express Corporation Employees' Pension Plan ("Fed Ex Plan") became the administrator for both the Seaboard Plan (which merged into the Fed Ex Plan) and the Flying Tiger Plan (which remained a separate and distinct plan, although administered by the Fed Ex Plan).

In 1988, Capt. Jordan was on long-term sick leave from Flying Tiger which informed him by letter of October 12, 1988, that after he exhausted his sick leave and vacation pay, he "may be eligible to go on disability retirement." Letter of Nadine Harding, Manager Crew Administration, to Capt. Jordan, October 12, 1988, Exhibit A, Statement of Material Facts as to Which Plaintiff Contends There is No Genuine Issue (Document No. 15). By said letter, Flying Tiger also informed plaintiff that to become eligible for disability retirement benefits, he would have to document "a disqualifying medical condition which precludes the issuance of an FAA medical certificate" and outlined the process for applying for disability retirement, including that plaintiff submit a written request at least 60 days prior to his last "date on the payroll." *Id.* Benefits would "commence the first day of the month following satisfaction of the three items listed above [*i.e.*, written, signed request; documentation from plaintiff's FAA medical examiner; and supporting medical documentation] and the exhaustion of sick leave and vacation." *Id.*

On March 14, 1989, plaintiff sent his "written request to activate the process of disability retirement approximately (60) days before the expiration of my long term sick leave." *Id.*, Exhibit B, Plaintiff's letter to Gloria Dickey, Employee Benefits Office, March 14, 1989. Plaintiff's letter enclosed an F.A.A. letter of a "pending status subject to additional review" which, however, was not an official FAA medical disqualification, and he requested "initiation of the disability retirement process in the event that I am subsequently denied a medical certificate. I will keep you informed of this matter." *Id.*

On June 3, 1989, plaintiff sent the Flying Tiger Plan a letter from his "FAA medical examiner ... as per the specifications of item (2) of [Ms. Harding's] letter of October 12, 1988" and a letter from his attending physician addressing item (3). Defendants' Supplemental Appendix (Document No. 23), App. No. 24, Plaintiff's letter to Ms. Harding, June 3, 1989. On June 5, 1989, the Flying

---

1. The Seaboard Plan and the Flying Tiger Plan collectively will be referred to as the "Pension Plans" throughout this opinion.

Tiger Plan responded to Capt. Jordan's request for "Disability Retirement effective June 1, 1989." *Id.*, Exhibit C, letter of Maria Baduria, Benefits Administrator, June 5, 1989. Said letter attached, *inter alia*, an Option Election Form and a Spousal Consent Form, and provided certain information to plaintiff regarding his options, including the following:

| | Monthly Benefit Payable from the Fixed and Variable Plans | |
|---|---|---|
| Straight Life Option | $6,769.29 | $75.26 |
| Joint and Survivor 50% | $6,109.08 | $71.55 |
| Joint and Survivor 100% | $5,576.79 | $63.12 |

*Id.*

Additionally, the Flying Tiger Plan advised plaintiff that if he opted for the Straight Life Option payable to him for his life only, he must select that option on the form provided and he and his wife, Linda E. Jordan, would have to execute and return the Spousal Consent Form along with proofs of age. Ms. Baduria's letter further stated that under the provisions of the Flying Tiger Plan, "Disability Retirement would commence the first day of the month following or coincident with approval of disability, exhaustion of all sick pay and vacation, receipt of your FAA Letter of Denial and your request for disability benefits." *Id.* Plaintiff also was given a telephone number to contact if he had any questions. *Id.*

Plaintiff returned the "necessary paperwork" by letter dated July 26, 1989, attaching his election of options and spousal consent forms executed on July 24, 1989, selecting the "Joint and Survivor 50% Option" (the "Option"). *Id.*, Exhibit D, Plaintiff's letter to Ms. Harding. On August 22, 1989, the Fed Ex Plan approved plaintiff's disability retirement and directed its insurance carrier to commence payments immediately, retroactive to June 1, 1989. *Id.*, Exhibit E, letter of Ms. Baduria to Union Mutual Life Insurance Company, August 22, 1989. Plaintiff received his first disability retirement check for June, July and August 1989, from the insurance company by letter of September 5, 1989. *Id.*, Exhibit F, letter of Ms. Wendy Berry to plaintiff, September 5, 1989.

Section 7.3 of the Seaboard Plan and Section 6.3 of the Flying Tiger Plan each provide: "Subsequent to a Member's Retirement Date the election of this Option [*i.e.*, the Joint and Survivor Option] cannot be rescinded nor can the designation of the joint annuitant be changed." Appendix to Defendants' Motion for Summary Judgment (Document No. 18), App. No. 1 (Seaboard Plan) and App. No. 22 (Flying Tiger Plan).

The parties do not dispute that, prior to plaintiff's election designation, the Pension Plans' administrators did not specifically inform plaintiff or his spouse that his election of the Option was irrevocable or that his designation of the joint annuitant could not be changed thereafter. Moreover, defendants do not seriously dispute plaintiff's assertion that, at no time after the 1980 Flying Tiger acquisition of Seaboard and prior to his election of the Option and commencement of disability benefits, had the Pension Plans distributed to plaintiff any summary plan description or booklet which mentioned the irrevocability of election of options, nor do the parties dispute that plaintiff made no specific request for information regarding the revocability or irrevocability of his election designation.

Plaintiff and Linda Jordan separated in late 1990 and divorced on October 30, 1991. Patricia A. Jordan (who is older than Linda and, thus, presumably no greater a "drain" on the pension funds, actuarially speaking) and plaintiff were wed on December 17, 1991. Under the terms of their property settlement, Linda Jordan agreed to relinquish all claims to plaintiff's retirement benefits under his retirement plans, including the joint and survivor annuity. (The property settlement has not been made part of the record.)

In January 1992, Capt. Jordan notified the Fed Ex Plan to substitute Patricia A. Jordan for Linda E. Jordan as his joint annuitant, which request was denied, but he was advised he could submit a Qualified Domestic Relations Order ("QDRO") certified by the state court if he wished to extinguish Linda Jordan's interest in the joint and survivor annuity. Plaintiff's Statement of Material Facts, Ex. H, letter of Loren E. Jensen, Fed Ex Plan Manager, February 3, 1992.

Subsequently, plaintiff obtained and forwarded a QDRO to the Fed Ex Plan, and again requested Fed Ex either substitute Patricia Jordan as his joint annuitant under the Option he elected or consider it rescinded and increase his monthly benefits to the higher level corresponding to the Straight Life Option. The Fed Ex Plan denied said request although, on November 24, 1992, it complied with the QDRO and "extinguished" Linda Jordan's survivor benefit, leaving plaintiff with the monthly benefits under the Option, but with no designated joint annuitant. Plaintiff thereafter retained attorneys and appealed the Fed Ex Plan's decision.

Defendants submit that representatives of the Pension Plans had informed plaintiff and his domestic relations attorney following his retirement but before he executed the QDRO, that his election of options and designation of beneficiaries was irrevocable and that perhaps it would be wise to leave Linda Jordan intact as his joint annuitant and negotiate with her for some other consideration viz a viz the property settlement. Affidavit of Shellie Weaver, Defendants' App. No. 9; Affidavit of Attorney David J. Kohloff, Defendants' App. No. 12. Plaintiff disputes the factual basis for and legal relevancy of these assertions.

On May 20, 1993, the Federal Express Corporation Qualified Employee Benefits Committee (the "Committee"), the fiduciary for the Fed Ex Plan, rejected plaintiff's appeal and his contention that the failure of the predecessor Pension Plans to timely notify him of the irrevocability of his election of the Option and designation of joint annuitant rendered said election/designation voidable; on April 20, 1994, the Committee rejected plaintiff's request for reconsideration, but reiterated its offer to reinstate Linda Jordan as his joint annuitant, an offer which still stands. *See* Defendants' Memorandum in Response to Plaintiff's Motion for Summary Judgment (Document no. 22), at 5. ("That option [to reinstate Linda Jordan as joint annuitant] remains available to Jordan today.").

Plaintiff brought this action against Fed Ex, the Fed Ex Plan, the Seaboard Plan and the Flying Tiger Plan, seeking monetary damages and equitable relief under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiff's first amended complaint asserts the following claims: Count I—under Section 205(c)(3) of ERISA, 29 U.S.C. § 1055(c)(3), Section 417(a)(3) of the Internal Revenue Code, and implementing Treasury Regulations, the fiduciaries for the Flying Tiger Plan were required to give plaintiff written notification at least 90 days "prior to the commencement of benefits" of the terms and conditions of the joint and survivor annuity option, and their failure to do so 90 days before June 1, 1989, the date plaintiff argues his benefits commenced, rendered his election of that Option and designation of Linda E. Jordan as joint annuitant "revocable." First Amended Complaint, ¶¶ 12–13; Count II—the Pension Plans were required by ERISA and applicable regulations to notify plan participants and their beneficiaries, prior to their elections of options, that "the terms of the Pension Plans barred any post-retirement change in that election, including the designation of his joint annuitant, even in the event of a divorce decree/Qualified Domestic Relations Order," and that the failure of the Pension Plans to do so rendered his election/designation "revocable." First Amended Complaint, ¶¶ 14–16; Count III—the failure of the Pension Plans to provide plaintiff with a copy of any Summary Plan Description, as required by Section 104(b)(1) of ERISA, 29 U.S.C. § 1024(b)(1), at any time before he made his election of options on July 24, 1989, rendered his election/designation "revocable." First Amended Complaint, ¶¶ 17–19; Count IV—by continuing to pay plaintiff the pension benefits pursuant to the Option he selected while extinguishing the rights of his joint annuitant (Linda) without permitting substitution of Patricia as the new joint annuitant, "the Pension Plans are unjustly enriching themselves at his expense." First Amended Complaint, ¶¶ 20–21.

The factual predicate for all of plaintiff's claims is the failure of the Pension Plans to timely or adequately notify him of the irrevocability of his election/designation and his assertion that, had he known, he would not have elected the Option with Linda Jordan as

his joint annuitant. Had they known, plaintiff and Linda Jordan aver by affidavits, plaintiff would have elected the Straight Life Option, Linda would have waived her joint and survivor benefits, and they would have used the higher monthly benefits to fund a contingent annuity or other appropriate retirement package for Linda, in light of the unsettled state of their marriage at that time. First Amended Complaint, ¶¶ 38–42.

Plaintiff requests this Court direct defendants to install Patricia A. Jordan as his joint annuitant or, alternatively, increase his monthly pension benefits in the amount of $663.92 (the difference between monthly benefits under the Straight Life and Joint and Survivor 50% Options), direct defendants to reimburse him at the rate of $663.92 per month from May 8, 1991, order defendants to pay plaintiff's costs and attorneys' fees, and award such other relief as this Court deems appropriate.

### Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language ... mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must view the facts in a light most favorable to the non-moving party and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Id.,* 477 U.S. at 242, 106 S.Ct. at 2505. The "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" *Ely v. Hall's Motor Transit Co.,* 590 F.2d 62, 66 (3d Cir.1978), quoting *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. Hollingsworth Corp.,* 996 F.2d 632 (3d Cir.1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224 (3d Cir.1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by showing—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Petruzzi's IGA Supermarkets,* 998 F.2d at 1230. When the non-moving party's evidence in opposition of a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the Court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### Legal Analysis

ERISA is a "prime example" of an "interlocking, interrelated, and interdepen-

dent remedial scheme" so comprehensive and "carefully integrated" as to invoke the strong presumption that Congress did not intend to implicitly authorize judicial remedies it did not explicitly craft. *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1169 (3d Cir.1990) (citations omitted). Implied ERISA remedies are disfavored. *Id.*

ERISA's civil enforcement scheme is set forth in section 502(a) which provides, in relevant part, as follows:

### CIVIL ENFORCEMENT

**Sec. 502** (a) A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [Liability for Breach of Fiduciary Duty];

(3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;

· · · · ·

(c)(1) Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary ... within 30 days after such request may in the courts' discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

· · · · ·

(g)(1) In any action under this title (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary,

the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(a).

Section 409 provides:

### LIABILITY FOR BREACH OF FIDUCIARY DUTY

**Sec. 409.** (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for violation of section 411 of this Act.

29 U.S.C. § 1109(a).

#### Preliminary Matters

■ Initially, defendants assert that the "arbitrary and capricious" standard of review governs the Fed Ex Plan's (specifically, the Committee's) determination and that plaintiff cannot prevail upon application of this deferential standard of review. The Court holds, however, that the arbitrary and capricious standard of review does not govern plaintiff's claims for "appropriate equitable relief" for breach of fiduciary duties regarding ERISA's disclosure requirements.

■ An ERISA plan administrator's eligibility determinations and interpretations of the terms of a pension plan are to be reviewed under a *de novo* standard *unless* the plan expressly or by necessary implication reserves such decisions to its discretion. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 105, 109 S.Ct. 948, 951, 103 L.Ed.2d 80 (1989); *Luby v. Teamsters Health, Welfare and Pension Trust Funds,* 944 F.2d 1176, 1178–79 (3d Cir.1991). *Firestone* involved a claim for benefits under the terms of a plan pursuant to section 502(a)(1)(B) "to recover benefits due him under the terms of

his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan", 29 U.S.C. § 1132(a)(1)(B), and the Supreme Court "express[ed] no view as to the appropriate standard of review for actions under other remedial provisions of ERISA." 489 U.S. at 108, 109 S.Ct. at 953.

Whether plaintiff's retirement benefits plans contained sufficient reservation of discretion to warrant the "arbitrary and capricious" standard of review of eligibility determinations and plan interpretations is not free from doubt, but does not matter in any event. Although plaintiff halfheartedly attempts to state a claim under the "terms of his plan[s]" and section 502(a)(1)(B), in the alternative, Plaintiff's Memorandum in Support of Summary Judgment (Document No. 14), 21–22 ("ERISA, § 502(a)(1)(3) provides Capt. Jordan with an Alternative Basis for Relief"), his claims clearly are *not* based on the terms of his retirement plans which, just as clearly, preclude the revocation of election or designation of another joint annuitants he seeks. Rather, plaintiff's theories of relief all are based on the Pension Plans' asserted violations of their fiduciary duties to timely disclose material information under section 502(a)(3).

Plaintiff simply does not assert a viable ERISA cause of action under "the terms of his plans" pursuant to section 502(a)(1)(B). *Hozier,* 908 F.2d at 1170 ("we hold that defendants' reporting and disclosure violations are *irrelevant* in determining plaintiff's entitlement to benefits under the terms of the 1985 plan. To the extent plaintiffs seek benefits under section 502(a)(1)(B), they must do so on the basis of the 'the terms of [their] plan,' which defines the scope of the entitlements it creates without reference to the extent of the disclosure of its terms"). *See also Gridley v. Cleveland Pneumatic Co.,* 924 F.2d 1310, 1315–18 (3d Cir.), *cert. denied,* 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d

1023 (1991); *Berger v. Edgewater Steel Co.,* 911 F.2d 911 (3d Cir.1990), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991).

■ As might be expected, in reviewing an administrator's decision as to whether it breached its fiduciary duties to participants or beneficiaries and, if so, whether such breach might entitle the plaintiff to some relief, the administrator's determination is entitled to little or no deference, and plaintiff's claims are examined *de novo. See, e.g., Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund,* 12 F.3d 1292 (3d Cir.1993).[2]

■ Also preliminarily, plaintiff suggests this Court may deny defendants' motion for summary judgment because they failed to comply with paragraph 6 of this Court's case management order requiring defendants to file a separate "Statement of Material Facts" with numbered paragraphs limited to one fact per paragraph, and in other particulars. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Document No. 20), 2 n. 1. The Court regards this defect in defendants' filings as *de minimis* and will not further delay summary judgment proceedings to require defendants to file a conforming statement of material facts, especially in light of their substantial compliance with the substance of said case management order if not its precise form. Defendants have, in their papers in support of their summary judgment motion and opposed to plaintiff's, submitted an extensive recitation of what they deem to be relevant facts, with record references and a good-sized Appendix to Defendants' Motion for Summary Judgment. (Document No. 18). Under these circumstances, sanctions for defendants' technical non-compliance with this Court's case management directives are not warranted.

**2.** As the Court of Appeals for the Third Circuit stated in *Luby,* administrators of pension plans "are not governmental agencies who are frequently granted deferential review because of their acknowledged expertise. Administrators may be lay persons appointed under the plan, sometimes without any legal, accounting, or oth-

er training preparing them for their responsible position, often without any experience in or understanding of the complex problems arising under ERISA, and ... little knowledge of the rules of evidence or legal procedures to assist them in factfinding." 944 F.2d at 1183.

As a final procedural matter, defendants vigorously argue that plaintiff's ERISA theories presented in Counts III and IV, (based on defendants' failure to provide a summary plan description as required by ERISA and unjust enrichment), were not presented to the Committee and have therefore been waived. Defendants cite *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377 (10th Cir.1992), for the proposition that this Court may consider only the evidence and arguments before the administrator of a pension plan at the time it rendered its decision.

The Court does not resolve the issue of whether in fact these theories of relief were adequately presented to the Committee because ERISA requires only claim exhaustion and not "issue" or "theory" exhaustion of administrative remedies. *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182, 186–87 (3d Cir.1984). Moreover, because plaintiff's claims for appropriate equitable relief based on the breach of fiduciary duty are subject to *de novo* review, this Court is not limited to the evidence placed before the administrator. *Luby,* 944 F.2d at 1184. *De novo* review means in this context, as it ordinarily does, that the court's inquiry is not limited to the record made before the plan administrator, nor is any deference due its conclusion; rather, the court may pursue whatever further inquiry it deems necessary or proper to the exercise of its independent judgment. *Id.* at 1184–85.

Although defendants lose most of the preliminary procedural skirmishes, nevertheless they will prevail on the merits. All of plaintiff's claims for relief rely on the alleged failure of the Pension Plans to provide timely, adequate notice, particularly the failure to inform plaintiff and his then spouse in a timely fashion that their election of joint and survivor annuity benefits and designation of a joint annuitant were irrevocable. This does not state an ERISA claim.

Plaintiff's untimeliness argument, and Count I of his complaint, is legally premised upon section 205(c)(3)(A), which states that each plan "shall provide to each participant, within a reasonable period of time before the annuity starting date (and consistent with such regulations as the Secretary of the Treasury may prescribe) a written explanation of (i) the terms and conditions of the qualified joint and survivor annuity, (ii) the participant's right to elect to waive that annuity "during the election period" and the effect of such a waiver, (iii) the rights of the participant's spouse, and (iv) the right to revoke previous elections during the "election period" of such revocation. 29 U.S.C. § 1055(c)(3)(A)(i–iv). The parties now agree that the applicable treasury regulation as to what is a "reasonable period of time" provides said written explanation of election of benefits options must be sent to each participant "no less than 30 days and no more than 90 days before the annuity starting date." Treas.Reg. § 1.417(e)–1(b)(3).

The parties disagree as to when, under the treasury regulations, plaintiff's "annuity starting date" occurred for the purposes of "triggering" the 30–90 day "election period" within which each participant must receive his or her explanation of election options and other information, and they disagree about the "purpose" of these notification requirements, specifically whether they were intended to protect a plan participant who in fact elects to receive the joint and survivor annuity or only to protect a spouse from being cut-out without his or her knowledge.

Plaintiff maintains his "annuity starting date" was June 1, 1989, and the failure of the Flying Tiger Plan to notify him of his option until June 5, 1989, renders his election/designation revocable. Defendants contend that plaintiff's "annuity starting date" was no earlier than September 1989 when his benefits *actually* commenced *after* plaintiff had completed all of the necessary FAA and medical documentation, even though the Flying Tiger Plan and/or the Fed Ex Plan determined his retirement disability began on, and made his payments retroactive to, June 1, 1989.

If September 1989 is the date of commencement of benefits, then the Flying Tiger Plan's June 5, 1989, notice and explanation of election options, etc., arguably was timely, *i.e.*, was received within the 30–90 day window. In any event, said notice and explanation unquestionably preceded his actual election of the joint and survivor annuity

option and the execution of the spousal consent form by Linda Jordan on July 24, 1989, so it is difficult to perceive any prejudice to plaintiff flowing from any untimeliness under ERISA or the Treasury Regulations.

█ Were it timely, the next question would be whether this notice and explanation was adequate in light of the "failure" to specifically inform plaintiff and his spouse that their election of benefits and designation of joint annuitant would be irrevocable, either by the June 5th notice/explanation or through a previous summary plan description required by section 102, 29 U.S.C. § 1022. This presents a closer question.

Neither ERISA, the Internal Revenue Code, nor Treasury Regulations specifically requires plan fiduciaries to notify participants and beneficiaries that their election between the various available options is irrevocable as is their designation of joint annuitant if they elect a joint and survivor annuity option. Plaintiffs argue, however, that such specific information is required by the penumbras of various sections of ERISA and the regulations, including ERISA's requirement that plan fiduciaries provide "summary plan descriptions" to participants and beneficiaries which shall include specific information described in § 102(b), 29 U.S.C. § 1022(b), "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Section 102(a)(1), 29 U.S.C. § 1022(a)(1). The specific information required to be contained in a summary plan description includes "the plan's requirements respecting eligibility for participation in benefits [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits . . . ." Section 102(b), 29 U.S.C. § 1022(b).

Section 205, 29 U.S.C. § 1055, sets forth the "Requirement of Joint and Survivor Annuity and Preretirement Survivor Annuity" and establishes the plan's disclosure obligations with regard to such annuities. Section 205 states, "Each pension plan . . . shall provide that—(1) in the case of a vested participant who does not die before the an-

nuity's starting date, the accrued benefit payable to such participant shall be provided in the form of a qualified joint and survivor annuity . . . ." 29 U.S.C. § 1055(a)(1). A plan meets the requirements of Section 205 only if under the plan, each participant "(i) may elect at any time during the applicable election period to waive the qualified joint and survivor annuity form of benefit . . . , and (ii) may revoke any such election at any time during the applicable election period. . . ." Section 205(c)(1)(A)(i) and (ii), 29 U.S.C. § 1055(c)(1)(A)(i) and (ii). Additionally, each plan is required to provide to each participant "within a reasonable period of time before the annuity's starting date (and consistent with such regulations as the Secretary of the Treasury may prescribe)" a written explanation regarding the terms and conditions of the qualified and joint survivor annuity and the election, waiver and revocation of benefits, the elements of which were detailed above.

Plaintiff would have this Court declare the "irrevocability" of elections of benefits and designations of joint annuitants to be material information which retirement plans *must* provide to all participants prior to commencement of retirement benefits even without specific request for such information from a participant, although "irrevocability" is not among the specifically enumerated items of mandatory disclosure set forth in the comprehensive statutory and regulatory scheme.

The Court declines to resolve these issues, because, even assuming that the June 5, 1989, notice and explanation of benefits options was untimely, and that the Pension Plans failed to disclose material information regarding "irrevocability" of election/designation, either in a summary plan description or otherwise, *such* nondisclosure does not give rise to any recognized ERISA cause of action under the circumstances and record presented by plaintiff.

█ There is no doubt that, although participants and beneficiaries are foreclosed from seeking relief for a breach of fiduciary duties "under the terms of a plan" with regard to ERISA's reporting and disclosure

obligations pursuant to section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), *Hozier*, they may pursue the avenue of "appropriate equitable relief" provided in section 502(a)(3), 29 U.S.C. § 1132(a)(3). *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir.1993).[3] "Appropriate equitable relief" includes monetary awards typically available in equity, such as specific performance, restitution and reimbursement for back benefits, but does not include "legal" monetary awards for compensatory or consequential damages. *In re Unisys Corp.*, 57 F.3d 1255, 1268–69 (3d Cir.1995) (interpreting *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), as prohibiting, under section 502(a)(3), monetary awards of a "legal" nature only, but not monetary awards normally available at equity).

The Court of Appeals for the Third Circuit has "repeatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act...."[4] *Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3d Cir.1995) (citations omitted). Whether framed in the language of "appropriate equitable relief" pursuant to 502(a)(3) or "equitable estoppel," "extraordinary circumstances" are the *sine qua non* for any relief from a fiduciary's failure to comply with ERISA's reporting or disclosure obligations. "Such circumstances include situations where the employer has acted in bad faith, or has actively concealed a change in the benefit plan, and the covered employees have been substantively harmed by virtue of the employer's actions." *Id.* at 55 F.3d at 125 (citations omitted).

Reviewing the applicable precedent of our Court of Appeals, nothing short of de-

monstrable bad faith, affirmative misrepresentation or concealment of ERISA pension benefits or rights with knowledge that the participants or beneficiaries might be misled has sufficed to demonstrate the necessary "extraordinary circumstances." *See e.g., Ackerman*, 55 F.3d at 124 (reversing district court's grant of summary judgment in employer's favor, and concluding that a reasonable factfinder could infer that the employer "actively concealed the change to its severance policy in order to prevent employees at the Altoona plant from leaving"; however, violation of summary plan description disclosure obligations did not give rise to cause of action under 502(a)(3) nor does noncompliance alone constitute "extraordinary circumstances"); *In re Unisys*, 57 F.3d at 1264 ("Our decisions ... firmly establish that when a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information *when it knows that its failure to do so might cause harm*, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries.... This claim is distinct from a claim for benefits under the terms of the plan because it requires different proof (proof of fiduciary status, misrepresentations, *company knowledge of the confusion* and resulting harm to the employees) than would be required for a contract claim...."); *Curcio v. John Hancock Mutual Life Ins. Co.*, 33 F.3d 226 (3d Cir. 1994) (reversing grant of summary judgment in favor of employer acting in its fiduciary capacity, pursuant to section 502(a)(3)(B), "appropriate equitable relief," on breach of fiduciary duty and equitable estoppel theories for making affirmative misrepresentations with knowledge beneficiary would be misled thereby, and stating that to "succeed under this [equitable es-

---

**3.** In *Howe v. Varity Corp.*, 36 F.3d 746 (3d Cir. 1994), the Court of Appeals for the Eighth Circuit held that individual plan participants and beneficiaries had a cause of action for breach of fiduciary duty under section 502(a)(3) against their employer-fiduciary for materially and affirmatively misleading participants into "transferring" to a subsidiary as part of a plan to eliminate the transferring participants' pension rights and benefits. The United States Supreme Court granted certiorari, *Varity Corp. v. Howe*, ── U.S. ──,

115 S.Ct. 1792, 131 L.Ed.2d 720 (1995), and held oral argument on November 1, 1995.

**4.** Section 502(a)(1)(A) references 502(c) which provides that an administrator who fails or refuses to comply with a participant's or beneficiary's request for information for 30 days may be personally liable for up to $100 per day, in the discretion of the court, from the date of such failure or refusal. 29 U.S.C. § 1132(a)(1)(A) and (c).

toppel] theory of relief, an ERISA plaintiff must establish (1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." The Court of Appeals concluded employer breached its fiduciary duties, affirmatively misled the beneficiary and her participating spouse, and awarded the beneficiary an additional $150,000 on a supplemental accidental death and dismemberment policy that the participant spouse would have opted to purchase had he known all of the material facts); *Bixler*, 12 F.3d at 1301–03 (recognizing a cause of action for a breach of fiduciary duty in failing to provide relevant information under section 502(a)(3) of ERISA, where the fiduciary had knowledge that its failure to provide the participant and/or his beneficiaries with complete and accurate information would mislead them as to the coverages in effect); *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1142–43 (3d Cir.1993) ("When a plaintiff asserts an equitable estoppel claim based on an ERISA reporting and disclosure violation, the plaintiff must satisfy more than simply the 'ordinary elements' of equitable estoppel." Plan administrator's failure to distribute information regarding employer's separation pay policy was insufficient to satisfy even ordinary elements of equitable estoppel, *i.e.*, material misrepresentation, reasonable reliance on said misrepresentation, and damages, and offered no evidence that they were victims of "extraordinary circumstances" that would provide them a remedy for failure to comply with ERISA's reporting and disclosure requirements); *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1318–19 (3d Cir. 1991), *cert. denied*, 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991) (even were summary plan description defective in failing to provide material information, payment of increased life insurance benefits would not constitute appropriate equitable relief in the absence of "extraordinary circumstances"); *Genter v. Acme Scale and Supply Co.*, 776 F.2d 1180 (3d Cir.1985) (failure of plan to provide a clear and plain

statement of hidden pension benefits which were available to some employees, but not to the uninformed, under circumstances where the plan discriminated against those not informed, was a breach of fiduciary duties to fully and adequately inform all of its employees of the full extent of their available benefits; additional insurance coverage in beneficiary's favor awarded).

 Assuming that plaintiff could establish on this record the "ordinary elements" of equitable estoppel, including that the Pension Plans had made a material representation or omission,[5] there is nothing *extraordinary* about the plan's untimely and inadequate disclosure, or rather nondisclosure of the irrevocability of plaintiff's election/designation. There are no allegations or evidence of bad faith on the part of any of the plan administrators, no hidden benefits that were available to some but not all plan participants, no affirmative misleading on the part of the administrators, and no actual knowledge that plaintiff was ignorant of the irrevocability of said elections/designation. Moreover, there is no hint that the Pension Plans' administrators had any inkling plaintiff was contemplating a divorce which might trigger a change of heart as to the joint annuitant at some time in the future. The "law is clear that the plan summary is not required to anticipate every possible idiosyncratic contingency that might affect a particular participant's or beneficiary's status." *Lorenzen v. Employees' Retirement Plan of the Sperry and Hutchinson Co.*, 896 F.2d 228, 236 (7th Cir.1990).

 "[A]bsent a specific participant-initiated inquiry, a plan administrator does not have any fiduciary duty to determine whether confusion about a plan term or condition exists. It is only after the plan administrator does receive an inquiry that it has a fiduciary obligation to respond promptly and adequately in a way that is not misleading." *Switzer v. Wal–Mart Stores, Inc.*, 52 F.3d 1294, 1299 (5th Cir.1995), *citing Electro-Mechanical Corp. v. Ogan*, 9 F.3d 445, 452 (6th Cir.1993). *See also Kreutzer v. A.O. Smith*

5. In the ERISA context, "a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision." *In re Unisys Corp.*, 57 F.3d at 1264 (citation omitted).

*Corp.,* 951 F.2d 739, 743 (7th Cir.1991), *citing, inter alia, Berger v. Edgewater Steel Co.,* 911 F.2d 911 (3d Cir.1990) ("An employer's procedural violations of ERISA entitle employees to monetary relief only in exceptional cases.... Most courts that have considered the issue have held that the employer must have acted in bad faith, actively concealed the benefit plan, or otherwise prejudiced their employees by inducing their reliance on a faulty plan summary before recovery for procedural violations is warranted.").

Thus, in the absence of allegations and proof of such extraordinary circumstances, even if defendants technically breached their fiduciary duties by failing to timely disclose material information regarding irrevocability of election of benefits and designation of joint annuitants (as to which this Court expresses no opinion), plaintiff has failed to state a claim under ERISA's section 502(a)(3), 29 U.S.C. § 1132(a)(3), as the jurisprudence of this Circuit makes quite clear. Accordingly, this Court must grant summary judgment in defendants' favor on Counts I, II and III of plaintiff's complaint.

Count IV purports to set forth a claim of "unjust enrichment" because defendants are paying plaintiff a reduced monthly benefit for the joint and survivor annuity option (as compared with the straight life option) without any joint annuitant designated, given the extinguishment of Linda E. Jordan's rights as joint annuitant pursuant to the QDRO. It is extremely unlikely that a federal common law claim of "unjust enrichment" is available to a participant or beneficiary who otherwise has comprehensive statutory causes of action and remedies under section 502, and so far a claim for "unjust enrichment" has only been recognized for employers or pension funds to recover mistakenly paid contributions where ERISA provided such a right without an explicit remedy. *See Plucinski v. I.A.M., National Pension Fund,* 875 F.2d 1052 (3d Cir.1989); *Luby,* 944 F.2d at 1187; *Travitz v. Northeast Dept. ILGWU Health and Welfare Fund,* 818 F.Supp. 761, 765 (M.D.Pa.1993). Our court of appeals has cautioned "that the district courts should not easily fashion additional

ERISA claims ... under the guise of federal common law." *Curcio,* 33 F.3d at 235, *citing Plucinski,* 875 F.2d at 1056. Summary judgment, therefore, also is appropriate on Count IV of plaintiff's complaint.

The Court notes that defendants have offered to reinstate Linda E. Jordan as the joint annuitant on plaintiff's retirement account which, although not the solution plaintiff desires, is nevertheless a valuable right which would undermine any claim of unjust enrichment to the plan. Defendants have represented to the Court that this offer remains open to plaintiff. Accordingly, the Court will direct defendants to keep this offer open for a reasonable period of time to permit plaintiff to exercise this option to reinstate Linda E. Jordan as his joint annuitant.