

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-19-1997

# Jordan v. Fed Express Corp

Precedential or Non-Precedential:

Docket 96-3103

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Jordan v. Fed Express Corp" (1997). *1997 Decisions*. Paper 136.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/136

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 19, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3103

CAPT. JOHN PAUL JORDAN

v.

FEDERAL EXPRESS CORPORATION, Administrator;
FIXED PENSION PLAN FOR SEABOARD WORLD AIRLINE
PILOTS; FLYING TIGER LINE, INC. VARIABLE ANNUITY
PENSION PLAN FOR PILOTS; FEDERAL EXPRESS
CORPORATION EMPLOYEE'S PENSION PLAN

JOHN PAUL JORDAN,
Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 94-cv-00930)

Argued January 16, 1997

Before: SLOVITER, Chief Judge, SCIRICA and  SEITZ,
Circuit Judges

(Filed June 19, 1997)

DANIEL M. KATZ, ESQUIRE
 (ARGUED)
Katz & Ranzman
1015 18th Street, N.W., Suite 801
Washington, D.C. 20036

 Attorney for Appellant

THOMAS L. HENDERSON, ESQUIRE
 (ARGUED)
McKnight, Hudson, Lewis &
 Henderson
6750 Poplar Avenue, Suite 301
P.O. Box 171375
Memphis, Tennessee 38187-1375

JAMES R. MULROY, ESQUIRE
ELIZABETH C. SMITH, ESQUIRE
Federal Express Corporation
1980 Nonconnah Boulevard,
 3rd Floor
Memphis, Tennessee 38132

 Attorneys for Appellees

**OPINION OF THE COURT**

SCIRICA, <u>Circuit Judge</u>.

This is an appeal under the Employee Retirement Income Security Act involving the failure of a plan administrator to notify a plan participant of the irrevocability of his retirement benefit election and joint annuitant designation. There are two principal issues on appeal. First, whether the plan administrator's failure to disclose the irrevocability of the retirement benefit election presents a cognizable ERISA claim. Second, if it does, whether the failure to explain the irrevocability of the benefit election was a breach of the administrator's fiduciary duty. Finding the plan participant did not state a cognizable claim under ERISA, the district court granted summary judgment in favor of the plans and the plan administrator. <u>Jordan v. Federal Express Corp.</u>, 914 F. Supp. 1180 (W.D. Pa. 1996). We will affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

**I**

In May 1965, airline pilot Captain John Paul Jordan commenced flying for Seaboard World Airlines, Inc. and

joined its Fixed Pension Plan for Seaboard World Airline Pilots. Jordan continued to fly for Flying Tiger Line, Inc. after it merged with Seaboard, until his disability retirement on June 1, 1989. He also joined the Flying Tiger Line, Inc. Variable Annuity Pension Plan for Pilots (collectively with the Seaboard Plan, the "plans"). Flying Tiger was the plan administrator until 1989, when it merged with the Federal Express Corporation. Thereafter Federal Express was the plan administrator. The plans are "employee benefit plans" under the Employee Retirement Income Security Act. 29 U.S.C. § 1002(3).

The plans provide retirement benefits for disabled participants in the form of a Statutory Joint and Survivor Annuity. According to the plans' provisions, Flying Tiger was required to furnish participants with information on the available retirement options prior to selection. The plans provide:

Not less than 90 days prior to a Member's Disability Retirement Date . . . the Company shall provide such member with a written explanation of the availability of an election to waive the Statutory Joint and Survivor Annuity, and a written explanation of the terms and conditions of the Statutory Benefit and the financial effect of an election under Section 8.3 [or 7.3].1

The plans list other retirement benefit options available to the participants besides the basic Joint and Survivor Annuity.2 Of greater consequence here is the irrevocability

_____

1. The "Company" is defined under both plans as "Flying Tiger Line Inc. or any successor corporation. The Company shall be the Plan Administrator and a named Fiduciary with respect to the Plans."

2. Sections 7.3 of the Variable Annuity Pension Plan (Flying Tiger Plan) and 8.3 of the Fixed Pension Plan (Seaboard Plan) provide that a disabled participant:

may elect to waive the [Joint and Survivor Annuity Option] at any time during the 90 days prior to retirement by filing [a] written election with the Company on a form suitable for such purposes. Such election shall clearly indicate that the Member is electing to receive Retirement benefits in accordance with [the Joint and Survivor Option, the Social Security Adjustment Option (only for

3

restriction placed on the participants' election. The plans mandate that, "subsequent to a Member's Retirement Date the election of [the Joint and Survivor Annuity] Option cannot be rescinded nor can the designation of the joint annuitant be changed."

In 1988, Jordan commenced a period of long-term sick leave. By letter, Flying Tiger informed Jordan that after exhaustion of sick leave benefits, he might be eligible for disability retirement. To qualify, Jordan had to submit documentation of his disqualifying medical condition and the Federal Aviation Administration's refusal to issue him a flying certificate at least sixty days prior to his retirement. After receiving the necessary paperwork, the Benefits Department would send Jordan a letter explaining his benefit level and retirement options.

On March 14, 1989, Jordan asked Flying Tiger to begin processing his disability retirement request. Rather than providing the necessary medical and FAA documentation, Jordan advised Flying Tiger that the FAA was evaluating his certification status. Jordan eventually filed the necessary documents on June 3, 1989.

Flying Tiger replied to Jordan's request on June 5, 1989, four days after he retired and two days after receipt of the FAA's letter denying flight certification and his physician's letter describing his debilitating condition. Accompanying the plans' response letter were blank copies of a "Retirement Election Form" and a "Spousal Consent Form."3 The benefits letter advised Jordan of his projected monthly disability benefits under three of "the most commonly elected benefit payment options:" (1) the Straight Life Annuity ($6,769.29); (2) the 50% Joint and Survivor

_____

Seaboard Plan), and the Certain and Life Option]. An election under this Paragraph may be revoked at any time prior to a Member's Retirement Date by filing a further written request in like manner that the election be changed . . . [N]o such election shall be valid unless a Spousal Consent is filed with the Retirement Board.

3. The Spousal Consent Form was required to be executed by Jordan and his wife if he selected the Straight Life Annuity over the Joint and Survivor Annuity. This was explained in the letter.

4

Annuity ($6,109.08); and (3) the 100% Joint and Survivor Annuity ($5,576.79).4

The letter did not mention that the plans prohibit post-retirement changes either to the form of the annuity elected or to the beneficiary designation if the Joint and Survivor Option were chosen.5 Jordan never requested information from the administrator on the revocability of his election, nor did he receive, before his retirement election, a copy of the terms and conditions of the plans or their Summary Plan Descriptions.

Jordan executed and returned the Retirement Election Form, selecting the Joint and Survivor 50% Annuity Option and designating his wife, Linda Jordan, as his joint annuitant. Jordan claims he and his wife were unaware that his election was irrevocable. Had they known it was irrevocable they would have chosen the Straight Life Annuity because of the tenuous state of their marriage.

In September 1989, Jordan received his first disability retirement check.6 Soon thereafter Captain Jordan divorced Linda Jordan and married Patricia Jordan. Under the property settlement, Linda Jordan relinquished all claim to

_____

4. Even though the plans stipulated that Jordan should receive an explanation of the 75% Joint and Survivor Annuity Option and the Certain and Life Option in sections 8.3 and 7.3, the letter failed to mention them.

5. Jordan was informed that his INVEST pension plan selection was revocable as he was entitled to receive additional benefits under the terms of the "INVEST" pension plan, and "after a period of five years ha[d] elapsed from [his] disability retirement date, [he] may elect a different option for benefit payments, including a single lump sum payment, based on the current account balance at that time." But this was independent and unrelated to his disability retirement election.

6. The benefits letter stated that Jordan's "Disability Retirement would commence the first day of the month following or coincident with approval of disability, exhaustion of all sick pay and vacation, receipt of your FAA Letter of Denial and your request for disability benefits." Despite Jordan's failure to submit in a timely fashion the requisite FAA certified documents and retirement election form, the pension plans agreed to pay him the retirement benefits retroactive as of June 1, 1989. Therefore the September 1989 check included payment for the months of June, July, and August.

5

Captain Jordan's retirement benefits, including her Joint and Survivor beneficiary interest.

In February 1992, Federal Express, the present administrator of the plans, denied Jordan's request to substitute Patricia Jordan for Linda Jordan as his designated joint annuitant because "there are no provisions [under the plans] for making changes to the payment form, thus your initial election is irrevocable." The letter advised him that "your payments will continue as is, with Linda E. Jordan as your survivor, in the absence of a Qualified Domestic Relations Order certified by the court."

Jordan sent Federal Express a copy of a Qualified Domestic Relations Order issued by the Mercer County Court of Common Pleas directing that "all rights and interests of Linda E. Jordan [under the plans] . . . are hereby terminated and extinguished in their entirety, the same as if such rights and interests had never accrued in the first instance." He asked the plans either to raise his benefit payment to match the monthly amount disbursed under the Straight Life Annuity or to recognize Patricia Jordan as the beneficiary of his Joint and Survivor 50% Annuity. In response, Federal Express canceled Linda Jordan's right to receive the benefits under the plans without either increasing Jordan's monthly benefits or designating Patricia Jordan as the new beneficiary.7

Jordan appealed the denial of survivor benefits to the Federal Express Corporation Qualified Employee Benefits Committee, which acts as fiduciary for the Federal Express pension plan. The Qualified Employee Benefits Committee

---

7. Federal Express contends that several months before Jordan requested the change in his retirement option, one of its staff attorneys explained to Jordan's domestic relations attorney that the Qualified Domestic Relations Order would only extinguish Linda Jordan's rights, and not permit Patricia Jordan to receive Linda Jordan's benefits or increase Jordan's monthly retirement payments. Federal Express claims it suggested to Jordan that he negotiate a settlement with his former wife. But Jordan asserts these conversations did not occur and under Federal Rule of Civil Procedure 56 all inferences must be made in his favor. In any event, the content of these phone conversations is immaterial for purposes of this appeal.

denied the appeal but offered to reinstate Jordan's previously designated beneficiary (Linda Jordan) if he so desired.

In June 1994, Jordan filed this action alleging the plans and the administrator violated statutory, regulatory, and plan requirements in their administration of his request for disability retirement benefits. In his amended complaint, Jordan claims he is entitled to revoke his election of his former wife Linda Jordan as his joint annuitant because (1) he did not receive timely written notice of his benefits; (2) he was not informed in advance of his election that he was barred from post-retirement changes in his election; (3) he did not receive a Summary Plan Description; and (4) the plans are being unjustly enriched by "charging" Jordan for the Qualified Joint and Survivor Annuity through reduced pension benefits without his receiving the benefit of having a designated joint annuitant.

On cross motions, the district court granted summary judgment to Federal Express, holding that Jordan failed to state valid claims under ERISA §§ 502(a)(1)(B) and 502(a)(3), or federal common law. Specifically the court found (1) the alleged violations of the plans' reporting and disclosure provisions could not be remedied under ERISA § 502(a)(1)(B), which only permits enforcement of the "terms of a plan;" (2) Jordan had failed to allege or put in issue any "extraordinary circumstances" required for a § 502(a)(3) claim; and (3) a federal common law claim for "unjust enrichment" was not available. This appeal followed.

**II**

This case arose under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. We have jurisdiction under 28 U.S.C. § 1291 and our scope of review is plenary. "When we review a grant of summary judgment, we apply the same test as the district court should have applied initially." Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir.), cert. denied, 115 S. Ct. 2611 (1995). A court may grant summary judgment when "there is no genuine issue as to any material fact and the moving party

7

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).8

## III

Jordan's cause of action is predicated on the administrator's failure to disclose material features of his retirement benefit election and his joint annuitant designation. The plans and the administrator contend the alleged violations are not cognizable under ERISA. Citing our prior decisions, they assert there is no § 502(a)(1)(B) liability for ERISA disclosure violations and no "extraordinary circumstances" that would permit a § 502(a)(3) claim. See Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1169 (3d Cir. 1990); Ackerman v. Warnaco, Inc., 55 F.3d 117, 124 (3d Cir. 1995). In response, Jordan claims there is a valid distinction between disclosure violations predicated on the ERISA statute and those based solely on the plans' language. The latter he contends are cognizable under ERISA. He also maintains his breach of

_____

8. An administrator's benefit eligibility determination is reviewed under an arbitrary and capricious standard if the plan grants the administrator discretionary authority to determine benefits or construe the terms of the plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 44 (3d Cir. 1993); Taylor v. Continental Group in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir. 1991). Whether the administrator or fiduciary is operating under a possible or actual conflict of interest is a factor which must be weighed in determining whether the decision was arbitrary and capricious. Firestone Tire & Rubber Co., 489 U.S. at 115. But it appears that this deferential standard only applies to actions brought under § 502(a)(1)(B) and not those brought under § 502(a)(3). See id., at 108 ("The discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations. We express no view as to the appropriate standard of review for actions under other remedial provisions of ERISA"); Luby v. Teamsters Health, Welfare, and Pension Trust Funds , 944 F.2d 1176, 1183 (3d Cir. 1991) ("[W]e read the sentence limiting the scope of the Firestone Court's discussion as intended to distinguish between remedial actions challenging claim denials brought under 29 U.S.C. § 1132(a)(1)(B) and remedial actions based on or brought under other ERISA provisions."). Because we hold there is no § 502(a)(1)(B) cause of action, we exercise plenary review.

fiduciary duty claim should not be evaluated under the Ackerman "extraordinary circumstances" test.

## A

The district court held that under Hozier, Jordan did not have a viable basis under § 502(a)(1)(B) for his disclosure claims. Jordan, 914 F. Supp. at 1188 (citing Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155 (3d Cir. 1990)).9 Section 502(a)(1)(B) provides a participant with a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

In Hozier we held that while reporting and disclosure violations may cause "substantive harm," they cannot form the basis for § 502(a)(1)(B) liability when "the plan defines the scope of the entitlements it creates without any reference to reporting and disclosure issues." Hozier, 908 F.2d at 1168. Because the employees in Hozier were only entitled to benefits under the plan if they were terminated because of a merger, we refused to find a § 502(a)(1)(B) cause of action since the plan entitlement provision did not create disclosure and reporting obligations. Id. ("[T]he determination of whether a particular employee was terminated `for the merger,' . . . does not depend on the extent to which the employee was made aware that he would receive certain severance benefits if terminated `for the merger.' ").

In Hozier, we acknowledged that imposing § 502(a)(1)(B) liability for statutory disclosure and reporting violations might serve the ERISA objective of ensuring that plan participants receive adequate information about their plans in order to protect their interests. Hozier, 908 F.2d at 1169

_____

9. The district court describes Jordan's attempt to state a § 502(a)(1)(B) claim as "halfhearted" because "his claims clearly are not based on the terms of his retirement plans which, just as clearly, preclude the revocation of election or designation of another joint annuitants (sic) he seeks." Jordan v. Federal Express Corp., 914 F. Supp. at 1188 (emphasis in original).

9

(citing H.R. Rep. No. 93-533 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4649). But there was also the countervailing ERISA consideration "that employees themselves are best served by an enforcement regime that minimizes employers' expected liability for reporting and disclosure violations--and with it, the disincentives against creating employee benefit plans in the first place . . . ." Id., at 1170. Because Congress chose to provide plan participants with a limited set of remedies for statutory disclosure violations, we refused to fashion an implied remedy which altered ERISA's comprehensive remedial scheme. Id., at 1171; see also Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985) ("We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.").10

The plans here set forth disclosure and reporting obligations. Sections 8.2 and 7.2 require the plan administrator to provide the participants with "a written explanation of the availability of an election to waive the Statutory Joint and Survivor Annuity, and a written explanation of the terms and conditions of the Statutory Benefit and the financial effect of an election under Section 8.3 [or 7.3]." Prior to waiving their Joint and Survivor Annuity and selecting a different retirement benefit option, participants were to receive a written explanation describing the "terms and conditions" of the Annuity from the plan administrator. Even if the plans' disclosure violations led Jordan to make an uninformed retirement selection, he cannot bring a § 502(a)(1)(B) claim where his "plan defines the scope of entitlements it creates without any reference to reporting and disclosure issues." Hozier, 908 F.2d at 1168.11 This is such a case. Therefore, Jordan

---

10. Moreover, we found that Congress provided other viable routes for the prosecution of the statutory disclosure violations under § 502(a)(1)(A) or § 502(a)(4).

11. In Hozier we stated:

An employee who never receives information about gaps in the coverage of his benefits package . . . is unable to make fully informed decisions about whether to purchase alternative insurance, or even to seek alternative employment. . . . It cannot, however,

10

does not have a cognizable § 502(a)(1)(B) claim against the plans or the administrator for their alleged disclosure failures.12

**B**

Jordan also sets forth a § 502(a)(3) claim. Under § 502(a)(3) a plan participant may bring a cause of action:

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a)(3).

The district court properly dismissed Jordan's § 502(a)(3) claim involving the ERISA statutory reporting and disclosure violations. We have previously held that "substantive remedies are generally not available for violations of ERISA's reporting and disclosure requirements" except "where the plaintiff can demonstrate the presence of `extraordinary circumstances.' " Ackerman v. Warnaco, Inc., 55 F.3d 117, 124 (3d Cir. 1995). We have not provided a rigid definition of "extraordinary circumstances." But "extraordinary circumstances" generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud. See id. at 125; Kurz v.

_____

plausibly be deemed relevant to a court's construction of "the terms of [a] plan" where, as here, the plan defines the scope of the entitlements it creates without any reference to reporting and disclosure issues."

Hozier, 908 F.2d at 1168.

12. Even if the plans defined the scope of the benefit entitlements with reference to disclosure and reporting issues, Jordan would still have to demonstrate that the Qualified Employee Benefit Committee's denial of his benefit request was arbitrary and capricious in order for him to recover under § 502(a)(1)(B), as the plans provide the Committee with the requisite discretionary authority. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

11

Philadelphia Elec. Co., 96 F.3d 1544, 1553 (3d Cir. 1996) ("To support [the extraordinary circumstances] element, we have previously required a showing of affirmative acts of fraud or similarly inequitable conduct by an employer."); Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 238 (3d Cir. 1994); Berger v. Edgewater Steel Co., 911 F.2d 911, 920-21 (3d Cir. 1990), cert. denied, 499 U.S. 920 (1991); see also Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d 786, 791 (7th Cir. 1996) ("[A] claim for monetary benefits in a suit based on technical violations of the notice provisions will be awarded only in `exceptional circumstances' involving bad faith, intentional concealment or prejudice to the employee."). Jordan presented no evidence that Flying Tiger acted in bad faith. Based on the record here, Jordan failed to establish the requisite "extraordinary circumstances," and the district court properly dismissed his § 502(a)(3) ERISA disclosure claims.

## C

In addition to his § 502(a)(3) ERISA disclosure claims, Jordan raised a breach of fiduciary duty claim against the plan administrator. The district court dismissed this claim because there was insufficient evidence of "extraordinary circumstances." In the alternative, the court suggested that " `absent a specific participant-initiated inquiry, a plan administrator does not have any fiduciary duty to determine whether confusion about a plan term or condition exists.' " Jordan, 914 F. Supp. at 1192 (quoting Switzer v. Wal-Mart Stores, Inc., 52 F.3d 1294, 1299 (5th Cir. 1995)).

The Supreme Court has held that § 502(a)(3) acts as a "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, ___ U.S. ___, 116 S. Ct. 1065, 1078 (1996).13 This includes breach of fiduciary duty. Id. After Varity there is little doubt that ERISA provides plan participants an equitable cause of action for an administrator's breach of fiduciary duty. This

---

13. The district court did not have the benefit of this decision as it was decided after the district court granted summary judgment.

12

is the claim that Jordan sets forth in Count II of his amended complaint - that the administrator breached its fiduciary obligation to inform him of the material aspects of his retirement election.

As a threshold matter, we must consider whether the district court erred when it required Jordan to satisfy the "extraordinary circumstances" test in order to establish a § 502(a)(3) claim for breach of a fiduciary duty. While we have required "extraordinary circumstances" to recover under ERISA's disclosure and reporting provisions, we have not employed the same test for breach of fiduciary duty claims. We have previously held:

[S]atisfaction by an employer as plan administrator of its statutory disclosure obligations under ERISA does not foreclose the possibility that the plan administrator may nonetheless breach its fiduciary duty owed plan participants to communicate candidly, if the plan administrator simultaneously or subsequently makes material misrepresentations to those whom the duty of loyalty and prudence are owed.

In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 57 F.3d 1255, 1264 (3d Cir. 1995), cert. denied, 116 S. Ct. 1316 (1996); see also Kurz, 96 F.3d at 1552 (treatment of the breach of fiduciary duty claim is treated as independent and distinct from the equitable estoppel claim based on ERISA disclosure violations); Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir. 1993) (employee's claim that the employer violated its fiduciary duty to inform not analyzed under the "extraordinary circumstances" test); Genter v. Acme Scale & Supply Co., 776 F.2d 1180 (3d Cir. 1985) (same).

It would appear that the Supreme Court has also determined that fiduciary duties operate both independently from and in conjunction with ERISA's specifically delineated requirements. See Varity Corp., 116 S. Ct. at 1074 ("If the fiduciary duty applied to nothing more than activities already controlled by other specific legal duties, it would serve no purpose."); see also Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 569 n.9 (1985)

13

("ERISA's rules concerning reporting, disclosure, and fiduciary responsibility apply to all employee benefit plans.").

As we acknowledged in Hozier, one of ERISA's objectives was to provide plan participants with greater disclosure protection. Hozier, 908 F.2d at 1170. Congress determined the prior Welfare and Pension Plans Disclosure Act was deficient in that employees were not given sufficient information from the plans to protect their interests. H.R. Rep. No. 93-533 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4649; Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 143-44 (2d Cir. 1997) ("Finding that the Disclosure Act was `weak in its limited disclosure requirements,' and `inadequate in protecting rights and benefits due workers,' . . . Congress enacted broader disclosure requirements in ERISA . .. .") (citations omitted). To afford the plan participants and beneficiaries with greater disclosure protection, Congress created reporting and disclosure requirements as well as a fiduciary duty framework which "[assures] the equitable character of the plans." Central States, 472 U.S. at 570. This is reflected in the legislative history. S. Rep. No. 93-127 (1974), reprinted in 1974 U.S.C.C.A.N. 4838, 4863 ("Title V amends the Welfare and Pension Plans Disclosure Act in two significant ways. First, by addition to and changes in the reporting requirements designed to disclose more . . . information . . . to participants . . . . Second, by the addition of a new section setting forth responsibilities . . . applicable to persons occupying a fiduciary relationship to employee benefit plans."); H.R. Rep. No. 93-1280 (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5171 ("The conferees also improved a number of House and Senate provisions which are vital for the protection of the pension rights of employees. This includes full disclosure of the features and operation of pension plans.").

While the statutory disclosure and reporting requirements are clearly set forth in ERISA, see , e.g., 29 U.S.C. § 1055; 29 U.S.C. § 1025; 29 U.S.C. § 1024, Congress chose not to enumerate all the fiduciary duties owed. Varity, 116 S. Ct. at 1070 ("[W]e recognize that these fiduciary duties draw much of their content from the

14

common law of trusts . . . . We also recognize, however, that trust law does not tell the entire story.") (citations omitted). Rather a broader approach was adopted where Congress assumed "the courts would interpret the prudent man rule (and other fiduciary standards) bearing in mind the special nature and purpose of employee benefit plans" as they develop a federal common law of rights and obligations under ERISA-regulated plans. Varity Corp., 116 S. Ct. at 1070 (citing H.R. Rep. No. 93-1280 (1974), reprinted in 1974 U.S.C.C.A.N. 5038, 5083); see Franchise Tax Bd. of the State of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 24 n.26 (1983) ("[A] body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans."); Ream v. Frey, 107 F.3d 147, 154 n.6 (3d Cir. 1997) ("Consequently, the Court has indicated that courts must create federal common law to flesh out the meaning of ERISA and effectuate fully its meaning and purpose."). Because the statutory reporting and disclosure requirements and remedies were carefully considered and described by Congress, we required a showing of "extraordinary circumstances" for a participant to receive an equitable remedy under § 502(a)(3). See Ackerman, 55 F.3d at 124 (citing Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1319 (3d Cir. 1991)). But for breach of fiduciary duty violations, Congress has left it to the courts to "develop a federal common law of rights and obligations under ERISA-regulated plans." Varity, 116 S. Ct. at 1070 (quoting Firestone Tire & Rubber Co., 489 U.S. at 110-11); see Menhorn v. Firestone Tire & Rubber Co., 738 F.2d 1496, 1499 (9th Cir. 1984) ("But Congress realized that the bare terms, however detailed, of these statutory [ERISA] provisions would not be sufficient to establish a comprehensive regulatory scheme. It accordingly, empowered the courts to develop, in the light of reason and experience, a body of federal common law governing employee benefit plans."). This has been done through the employment of trust principles and the creation of federal common law.

Furthermore, a review of the case law indicates that the fiduciary duty jurisprudence has evolved from a different

15

set of policy concerns from those animating ERISA's statutory disclosure requirements. The "extraordinary circumstances" limitation set forth in Ackerman flows from "Congress's judgment that employees themselves are best served by an enforcement regime that minimizes employers' expected liability for reporting and disclosure violations-- and with it, the disincentives against creating employee benefit plans in the first place . . . ." Hozier, 908 F.2d at 1170. But the basis for fiduciary duty jurisprudence is "to protect and strengthen the rights of employees, to enforce fiduciary standards, and to encourage the development of private retirement plans." In re Unisys Sav. Plan Litig., 74 F.3d 420, 434 (3d Cir.), cert. denied, 117 S. Ct. 56 (1996). Congress believed this protection would best be provided through the enforcement of fiduciary duties and the provision of information concerning the plans. H.R. Rep. No. 93-533 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4649. Moreover, Congress has stated that its objectives behind adopting the fiduciary duty requirement are "that reliance on conventional trust law often is insufficient to adequately protect the interests of plan participants and beneficiaries . . . [and] assuming that the law of trusts is applicable, . . . without standards by which a participant can measure the fiduciary's conduct he is not equipped to safeguard either his own rights or the plan assets." Id.

As a consequence, we evaluate fiduciary duty to inform claims differently from violations of ERISA's reporting and disclosure requirements. Because "extraordinary circumstance" is not required under our fiduciary duty analysis, the district court erred when it held there was no cognizable § 502(a)(3) claim for a fiduciary breach.

**IV**

**A**

In the alternative, the district court suggested that even if there were a cognizable claim for breach of fiduciary duty, there was no basis to find the administrator breached that duty by failing to disclose the irrevocability of Jordan's election beforehand.14 Jordan contends the administrator violated its duty to disclose by providing him with an

_____

14. Because the district court held there was no cognizable § 502(a)(3) claim, it did not reach the fiduciary breach issue, even though it discussed the claims' merits.

16

incomplete explanation of the terms and conditions of his election.15 The district court correctly found that neither ERISA, the Internal Revenue Code, nor the Treasury Regulations specifically require administrators to inform plan participants that the retirement benefit election as well as the joint annuitant designation is irrevocable during the post-retirement period. But this is not dispositive of whether the administrator breached its fiduciary duty to inform.

It is undisputed that Flying Tiger, as the administrator of the plans, was a fiduciary. In fact, the plans define the role of administrator as "a named fiduciary." 16 The question here is whether the administrator breached its duty to disclose even though the participant made no specific inquiry.

On June 5, 1989, Jordan received a four page letter which provided information "pertinent to [his] interest in Disability Retirement effective June 1, 1989." The letter failed to mention that post-retirement changes to the participant's retirement plan selection are prohibited. Unaware of the revocability restriction, Jordan selected the 50% Joint and Survivor Annuity and designated his wife Linda Jordan as the beneficiary, even though they had marital difficulties at the time. Jordan brought this action, in part claiming that Flying Tiger maintained a duty to inform him of the irrevocability of his decision, and its failure to do so constitutes a breach of its fiduciary duties under ERISA.

_____

15. Under the plans' disclosure requirements found in § 7.2 and § 8.2, the administrator was required to provide the participants in advance of their retirement selection with a "written explanation of the availability of an election to waive the Statutory Joint and Survivor Annuity, and a written explanation of the terms and conditions of the Statutory Benefit and the financial effect of an election under 8.3[or 7.3]."

16. "There are three ways to acquire fiduciary status under ERISA: (1) being named as the fiduciary in the instrument establishing the employee benefit plan, 29 U.S.C. § 1102(a)(2); (2) being named as a fiduciary pursuant to a procedure specified in the plan instrument, . . . 29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1002(38); and (3) being a fiduciary under the provisions of 29 U.S.C. § 1002(21)(A) . . . ." Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc., 93 F.3d 1171, 1179 (3d Cir. 1996).

17

ERISA defines the scope of a fiduciary's duty as follows:

[A] fiduciary shall discharge his duties with respect to a plan in the interest of the participants and beneficiaries and --

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administerin g the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

29 U.S.C. § 1104(a). Furthermore, the Supreme Court has found that "Congress intended by § 404(a) to incorporate the fiduciary standards of trust law into ERISA, and . . . that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 152-53 (1985); Ream, 107 F.3d at 153 ("A fiduciary's duties under ERISA are based both on ERISA, particularly the prudent person standard as set forth in ERISA § 404, 29 U.S.C. § 1104, and on the common law of trusts."); In re Unisys Sav. Plan Litig., 74 F.3d 420, 434 (3d Cir. 1996) ("We also bear in mind that Congress has instructed that section 1104 `in essence, codifies and makes applicable to . . . fiduciaries certain principles developed in the evolution of the law of trusts.' ") (quoting S. Rep. No. 93-127 (1974), reprinted in 1974 U.S.C.C.A.N. 4838, 4863).

Through the application of trust principles, we have held that fiduciaries have a duty to inform which "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Bixler, 12 F.3d at 1300.17 But "a

_____

17. The Restatement (Second) of Trusts provides:

18

fiduciary has a legal duty to disclose to the beneficiary only those material facts known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." Glaziers, 93 F.3d at 1182; see also Bixler, 12 F.3d at 1300 ("[T]he duty to disclose material information `is the core of a fiduciary's responsibility.' ") (quoting Eddy v. Colonial Life Ins. Co. of America, 919 F.2d 747, 750 (D.C. Cir. 1990)). The inquiry here is whether the administrator failed to inform Jordan of a material aspect of his upcoming benefit election. See In re Unisys, 57 F.3d at 1265 n.15 ("An ERISA fiduciary does have . . .`a duty to communicate complete and accurate information about a beneficiary's status.' ") (quoting Eddy, 919 F.2d at 751).

In Unisys we held a misrepresentation rises to a material level if "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision." In re Unisys, 57 F.3d at 1264.18

_____

d. Duty in the absence of a request by the beneficiary. Ordinarily the trustee is not under a duty to the beneficiary to furnish information to him in the absence of a request for such information. . . . In dealing with the beneficiary on the trustee's own account, however, he is under a duty to communicate to the beneficiary all material facts in connection with the transaction which the trustee knows or should know. . . . Even if the trustee is not dealing with the beneficiary on the trustee's own account, he is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person.

Restatement (Second) of Trusts § 173, comment d (1959) "(cited in, Bixler, 12 F.3d at 1300).

18. Similar tests for materiality have been adopted in other contexts. A representation is material for purposes of the Immigration and Nationality Act if it "had a natural tendency to influence the decisions of . . ." a party. Kungys v. United States, 485 U.S. 759, 772 (1988). Also "an omitted fact is material [for purposes of the securities law] if there is a `substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.' " Shapiro v. UJB Fin. Corp., 964 F.2d 272, 280 n.11 (3d Cir.) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438,

19

An omission may rise to a material level for the same reason. Irrevocability is arguably of material importance. We need not take judicial notice of the national divorce rate to hold that the non-disclosure of the irrevocability of a joint annuitant's designation may be a material omission on the part of an administrator. Plan participants might reasonably expect that a written explanation of a Retirement Benefit would inform them of the permanence of their benefit election post-retirement.

It is apparent why a participant might consider irrevocability material. According to the Jordans' affidavits, both Linda Jordan and Captain Jordan would have chosen to forego the Joint and Survivor benefit package in favor of the Straight Life Annuity option if they had known of the irrevocability of the selection. In fact, only a few months after his election they divorced and reached a settlement where Linda Jordan relinquished all entitlement to her beneficiary interest. According to Jordan, this unrealized expectation resulted in his relying on an incomplete written explanation and making an uninformed benefit selection.

Barring post-retirement changes to a participant's election or joint annuitant designation is justified. This policy is necessary to avoid manipulation of annuity disbursements through the selection of a Straight Life Annuity or the designation of a younger joint annuitant when the original joint annuitant's life expectancy diminishes. But there is an issue of fact here whether the plan administrator breached its duty to inform Jordan in its June 5th letter of the existence of such a restriction before he made his irrevocable election.

We recognize that participants have a duty to inform themselves of the details provided in their plans, Genter v. Acme Scale & Supply Co., 776 F.2d 1180, 1185 (3d Cir. 1985), and that the irrevocability restriction was contained

_____

449 (1976)), cert. denied, 506 U.S. 934 (1992). Additionally, Black's Law Dictionary defines a "Material representation" as something that "relates to a matter upon which plaintiff could be expected to rely in determining to engage in the conduct in question." Black's Law Dictionary at 977 (6th ed. 1990).

20

in Jordan's plans. But it is uncontested that Jordan did not receive copies of the plans or their Summary Plan Descriptions before his election. We also recognize that Jordan never requested information on irrevocability. The district court held this potentially dispositive since " `absent a specific participant-initiated inquiry, a plan administrator does not have any fiduciary duty to determine whether confusion about a plan term or condition exists. It is only after the plan administrator does receive an inquiry that it has a fiduciary obligation to respond promptly and adequately in a way that is not misleading.' " Jordan, 914 F. Supp. at 1192 (quoting Switzer v. Wal-Mart Stores, Inc., 52 F.3d 1294, 1299 (5th Cir. 1995)).

But in prior cases, we have held a specific request for information is not necessarily a prerequisite forfinding a fiduciary breach to inform. As we held in Glaziers, "it is clear that circumstances known to the fiduciary can give rise to this affirmative obligation [to inform] even absent a request by the beneficiary." Glaziers, 93 F.3d at 1181. Moreover, in Bixler we held that "while the beneficiary may, at times, bear a burden of informing the fiduciary of her material circumstance, the fiduciary's obligations will not be excused merely because she failed to comprehend or ask about a technical aspect of the plan." Bixler, 12 F.3d at 1300. Here, we do not believe Jordan's failure to inquire is fatal to his claim. Glaziers, 93 F.3d at 1181 ("Indeed, absent such information, the beneficiary may have no reason to suspect that it should make inquiry into what may appear to be a routine matter."). Under the terms of the plans, the administrator was obligated to provide all participants, before they made their retirement selection, with a written explanation of the annuity, which contained "information pertinent to [their] interest in Disability Retirement." Letter from Flying Tiger to Jordan of 6/5/89 at 1. Although the eighty-one page Flying Tiger Plan and the fifty-one page Seaboard Plan described the irrevocability of the participant's retirement election post-retirement, the June 5th letter describing his retirement options contained no reference to irrevocability. Interestingly, the June 5th letter explicitly discussed Jordan's ability to revoke his INVEST pension plan election. And before retirement, Jordan was permitted to freely change his retirement plan

21

option. But once Jordan retired, his annuity election became irrevocable. The letter describing his retirement options did not notify him of this crucial difference. Because of Jordan's previous experience with changing his retirement options, the explicit reference to his ability to revoke his INVEST plan selection, and the administrator's failure to disclose the irrevocability of his retirement annuity selection in the June 5th letter, Jordan was not put on notice that a change in revocability would result upon retirement. For these reasons, we do not believe Jordan's failure to inquire bars his claim.

There still is an issue of fact whether the administrator's failure to describe the irrevocability of Jordan's retirement selection constituted a material omission and a breach of its duty to exercise the "care, skill, prudence and diligence" as required under ERISA.19 This question is left to the fact finder.

If Jordan is entitled to relief, he may recover back benefits, recision of his retirement selection, and the opportunity to select a new disability retirement option. See In re Unisys, 57 F.3d at 1269.

**B**

Jordan also contends the written explanation was untimely as he did not receive it at least "ninety (90) days prior to [his] Disability Retirement Date." It appears that the administrator violated the plans' provision requiring at least a ninety day review period. Jordan retired on June 1, 1989 and received his written explanation on June 5, 1989. But we find as a matter of law that this does not constitute a breach of the administrator's fiduciary duty. Before the plans were to supply Jordan with the retirement election information, he was required to provide the administrator, at least sixty days prior to his projected retirement date, with a written request for disability retirement, a letter from

_____

19. "Summary judgment on `the question of materiality' is appropriate only if `reasonable minds cannot differ.' " Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 135 (3d Cir.) (quoting TSC Indus., Inc. v. Northway Inc., 426 U.S. 438, 450 (1976)), cert. denied, 510 U.S. 1020 (1993).

22

the FAA medical examiner which documented his disqualifying medical condition, and supporting medical documentation. Jordan failed to timely submit these documents. Rather he sent the administrator a letter which merely stated that the FAA was currently reviewing his disability application.

The plan administrator would not have exercised its fiduciary duties with the "care, skill, prudence and diligence" of a "prudent man" if it started to process Jordan's retirement application and sent him the informational letter before it was assured that Jordan qualified for disability retirement. It was not until June 3, 1989 that the Administrator received the documents establishing Jordan's disability status. Once this information was received, the administrator immediately sent out the informational letter and selection forms. Under the circumstances, the administrator did not breach its fiduciary duty by sending Jordan the informational letter on June 5, 1989.20

**C**

The administrator's failure to provide Jordan with all of the required retirement alternatives in the benefits letter was not raised before the district court. For this reason, we will not reach this issue. Harris v. City of Phila., 35 F.3d 840, 845 (3d Cir. 1994) ("This Court has consistently held that it will not consider issues that are raised for the first time on appeal."); Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir. 1976) (same).

**D**

Jordan also asserts a federal common law claim for unjust enrichment. We have held that federal common law causes of action are warranted when they are "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." Plucinski v.

---

20. As stated previously, Jordan's timeliness claim based on ERISA's disclosure requirements is not cognizable. Ackerman, 55 F.3d 117 (3d Cir. 1995).

I.A.M. Nat'l Pension Fund, 875 F.2d 1052, 1056 (3d Cir. 1989). Furthermore, we have previously held "that the district courts should not easily fashion additional ERISA claims . . . under the guise of federal common law." Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 239 (3d Cir. 1994); Van Orman v. American Ins. Co., 680 F.2d 301, 312 (3d Cir. 1982) ("Where Congress has established an extensive regulatory network and has expressly announced its intention to occupy the field, federal courts will not lightly create additional rights under the rubric of federal common law."); see also Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985) ("The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.") (emphasis in original). Because Jordan brought a claim under § 502(a)(3), the district court correctly dismissed his federal common law "unjust enrichment" claim because it was not needed to "fill in interstices of ERISA."

**E**

Finally, Jordan presents a claim for damages based on the plans' failure to provide Jordan with a Summary Plan Description pursuant to ERISA sections 102(a)(1) and 104(b)(1). This ERISA statutory claim is not cognizable under § 502(a)(1)(B) or § 502(a)(3). Hozier, 908 F.2d 1155; see also Ackerman, 55 F.3d 117. We will affirm the district court's dismissal.

**V**

In conclusion, we hold that Jordan's § 502(a)(3) breach of fiduciary duty claim alleging failure of the administrator to inform him of the irrevocability of his benefit selection is cognizable under ERISA. We believe there is a factual issue which precludes summary judgment - whether the administrator's failure to mention irrevocability in its June 5, 1989 letter breached its fiduciary duty. We will affirm the dismissal of the timeliness, unjust enrichment, and summary plan description claims. We will also affirm the

24

dismissal of the other ERISA statutory and regulatory claims.

For the foregoing reasons we will affirm in part, reverse in part and remand for proceedings consistent with this opinion.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

25