Natale BOCCHINO, Appellant

v.

**TRUSTEES OF DISTRICT COUNCIL IRONWORKERS FUNDS OF NORTHERN NEW JERSEY.**

No. 08–3636.

United States Court of Appeals, Third Circuit.

Argued May 21, 2009.

Opinion Filed July 15, 2009.

Reports were issued Velihaj failed to explain how they affected his case.

**198**

John A. Craner (Argued), Craner, Satkin & Scheer, Scotch Plains, NJ, for Appellant.

Joseph R. Pagano (Argued), Jardine & Pagano, Springfield, NJ, for Appellee.

BEFORE: RENDELL, STAPLETON and ALARCÓN,* Circuit Judges.

*OPINION OF THE COURT*

STAPLETON, Circuit Judge:

Appellant Natale Bocchino appeals the District Court's grant of summary judgment in favor of Appellee Trustees of District Council Ironworkers Funds of Northern New Jersey ("Fund" or "Trustees") in regard to the interpretation of certain provisions of the Pension Plan of the Ironworkers District Council of Northern New Jersey ("Pension Plan"). We will affirm.

**I.**

Because we write only for the parties who are familiar with the factual context and procedural history of this case, we set forth only those facts necessary to our analysis.

At the age of 69, and after nearly 40 years of employment, Bocchino retired from his position as an ironworker. Prior to his retirement, Bocchino met with Michael Rosenstock, a pension plan analyst at

the Fund, to discuss his pension benefit. Rosenstock estimated that Bocchino's monthly pension would be $2,762.80, and Bocchino subsequently submitted his pension application. On June 28, 2006, over one month after Bocchino submitted his application, he received a letter from Rosenstock stating that his pension application had been approved and that he was entitled to a 1% per month actuarial increase for each month he had delayed retirement beyond the normal retirement age of 65. Since Bocchino had worked for 49 months past the age of 65, he was entitled to a 49% increase. Rosenstock recalculated his monthly pension to be $4,173.50.

Bocchino's retirement was effective July 1, 2006, and he received a pension of $4,173.50 per month until October 2006, when he received a letter from the Fund Administrator, Peter A. Sclafani, entitled, "correction of overpaid pension." Sclafani stated that the Fund had made two errors in calculating Bocchino's pension. First, Bocchino was eligible for the 1% increase only for months in which he did not work more than 40 hours as an ironworker in the District. Based on this provision, Bocchino could receive the 1% increase for only 16 months. The Fund had also incorrectly applied the 1% increase to Bocchino's baseline pension at age 69, rather than to his baseline pension at age 65. Taking these mistakes into account, the Administrator stated that Bocchino's correct monthly pension was $3,192.76, and that he had received an overpayment of $980.74 per month for four months, for a total of $3,922.96. The Administrator adjusted Bocchino's pension downward and demanded that he return the overpayment.

The Plan contains a provision entitled "Delayed Retirement" which discusses the

---

* Hon. Arthur L. Alarcón, Senior Circuit Judge    for the Ninth Circuit, sitting by designation.

1% actuarial increase and its restrictions.[1] Bocchino, however, like other ironworkers, did not receive a copy of the Plan, but rather, only the Summary Plan Description ("Summary"), which is described as a "concise, easy-to-understand explanation of the Plan's important features." ˙ A90. The Summary contained no discussion of the 1% per month actuarial increase for delayed retirement, nor did it discuss the restrictions upon the increase. The Summary also stated that "[i]f there is a conflict between the wording of this [Summary] and the official Plan Documents, the official documents will govern." *Id.*

Bocchino appealed the Administrator's decision to reduce his pension to the Trustees, who denied his claim. He then filed an action in the Superior Court of New Jersey, which was removed to the District Court of New Jersey. Bocchino sought to have his pension restored to $4,173.50 per month pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), which states that a civil action may be brought "to recover benefits due to [a participant] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his future rights under the terms of his plan." He also sought a declaration that the Trustees acted unreasonably and in bad faith and violated their fiduciary duties by suspending his pension benefit and demanding reimbursement of him.

The parties filed cross motions for summary judgment. The District Court granted summary judgment in favor of the Fund, determining that, although the Summary was "woefully inadequate" in its failure to explain the Delayed Retirement Benefit, the Fund did not breach its fiduciary duty to Bocchino. In making this determination, the Court noted that there was no indication that the Fund intentionally misrepresented or omitted information about the delayed retirement benefit. The Court also noted that Bocchino "knew that the Summary was not a substitute for the Pension Plan documents, and that the Pension Plan documents control," so the outcome was neither unexpected or unfair. The Court determined that the Fund was not equitably estopped from reducing his retirement benefit of $4,173.50, because Bocchino had not alleged "extraordinary circumstances" which would justify the Court's departure from the general rule of noninterference with an action of the trustees of a pension plan. The Court determined, however, that, although Bocchino was not entitled to retain the elevated

---

1. The provision states in relevant part:

Delayed Retirement

   (i) If the Annuity Starting Date is after the Participant's Normal Retirement Age, the monthly benefit will be the accrued benefit at Normal Retirement Age, actuarially increased for each complete calendar month between Normal Retirement Age and the Annuity Starting Date for which benefits were not suspended, and then converted as of the Annuity Starting Date to the benefit payment form elected in the pension application. . . .

   (iii) [sic] If a Participant first becomes entitled to additional benefits after Normal Retirement Age, whether through additional service or because of a benefit increase, the actuarial increase in those benefits will start from the date they would first have been payable rather than Normal Retirement Age.

   (iv) The actuarial increase will be 1% per month for the first 60 months after Normal Retirement Age and 1.5% per month for each month thereafter.

A159.

The Delayed Retirement provision thus provides that the pension amount will be actuarially increased for each complete calendar month for which benefits were not suspended. Plan section 6.9(a) provides that "Benefits shall be suspended for any month in which a Participant works 40 hours or more in a job category covered by a Collective Bargaining Agreement within the geographic area covered by the Plan." A162.

pension, equity factors weighed in favor of his not being required to reimburse the Fund for its overpayment.

Bocchino subsequently filed this appeal.[2]

## II.

As a preliminary matter, we consider whether the District Court properly applied the arbitrary and capricious standard of review to the Trustees' decision. Where a trustee exercises discretionary authority to "construe disputed or doubtful terms," of a plan, the decision of the trustee will not be disturbed if reasonable. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). We agree with the District Court that the Trustees were given the power to construe disputed terms under Sections 6.3 and 6.4(a) of the Plan, which grant the Trustees authority to "judge the standard of proof required in any case and the application and interpretation of this Plan," and to resolve appeals from decisions involving eligibility. A156. Bocchino asserts that the Trustees were acting under a conflict of interest and insists that we take this conflict into account when determining whether the decision was arbitrary and capricious. A conflict of interest is apparent when a party "both funds the plan and evaluates the claims" pursuant to that plan. *Metropolitan Life v. Glenn*, —— U.S. ——, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008). We find no evidence of a conflict of interest on the part of the appellees, however.

Applying the same standard as the District Court, we turn now to the merits of Bocchino's claim that the Trustees erred in refusing to restore his pension to the amount promised in the June 28, 2006, letter. We find no conflict between the Summary and the Plan. The Summary is silent in regard to how pensions are affected if retirement is delayed beyond the age of 65;[3] information about the delayed retirement benefit appears only in the Plan document itself. Since Bocchino must rely on the Plan for the benefits he seeks, we hold that he is also bound by the restrictions of the Plan in regard to delayed retirement. We further hold that the Trustees' interpretation of those restrictions was a reasonable one.

█ Bocchino asserts that the Trustees violated their fiduciary duty by excluding information about the delayed retirement benefit from the Summary.[4] To establish a breach of fiduciary duty, a Plaintiff

---

**2.** We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

**3.** The only provision of the Summary which discusses working beyond retirement states:

WHAT IF YOU WORK AFTER YOU RETIRE? There are certain restrictions on the type of (and how much) work you may do after you retire and still receive a pension from the Plan.

. . .

Disqualifying Employment After Normal Retirement Age

If you are receiving a pension (not including a 25–Year Service Pension or Disability Pension) and you are at least age 65, you will be disqualified for a pension if you are employed or self-employed for more than 40 hours a month in a job category covered

by the collective bargaining agreement. A111.

**4.** An ERISA fiduciary:

shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

. . .

" 'must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation.' " *Bursteinn v. Retirement Account Plan For Employees of Allegheny Health Educ. and Research Foundation,* 334 F.3d 365, 384 (3d Cir.2003) (quoting *Daniels v. Thomas & Betts Corp.,* 263 F.3d 66, 73 (3d Cir.2001)). We agree with Bocchino that an ERISA trustee may breach its fiduciary duty by omitting material information, at least where the trustee knows that silence may be harmful. *In re Unisys Corp. Retiree Medical Ben. ERISA Litig.,* 57 F.3d 1255, 1262 (3d Cir.1995); *Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1300 (3d Cir. 1993). At this stage in the proceedings, Bocchino has sufficiently established that the Trustees committed a material omission by failing to include information about the delayed retirement benefit in the Summary. However, Bocchino has failed to show detrimental reliance. To the contrary, Bocchino concedes that he did not have knowledge of "any enhancement" of benefits arising out of his delayed retirement at the time that he decided to retire.[5] Since Bocchino made the decision to retire without knowing that he was entitled to enhanced benefits—and since the Summary does not provide the benefits he seeks in any case—Bocchino cannot show that he detrimentally relied on the Summary in expecting a $4,173.50 per month pension.[6]

 We likewise affirm the District Court's denial of Bocchino's equitable estoppel claim. To establish a claim for equitable estoppel, an " 'ERISA plaintiff must establish (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances.' " *Burstein,* 334 F.3d at 383 (quoting *Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 235 (3d Cir.1994)). Bocchino did not detrimentally rely on the incorrectly calculated benefit amount in the June 28, 2006, letter when making the decision to retire, since he had submitted his pension application over one month earlier. He has also not alleged the existence of any extraordinary circumstances, such as bad faith or fraud, which would justify the application of equitable estoppel. *See id.* (stating that extraordinary circumstances "generally involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud") (quoting *Jordan v. Federal Express Corp.,* 116 F.3d 1005, 1011 (3d Cir.1997)).

### III.

For the reasons set forth above, we will affirm the judgment of the District Court.

---

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1).

5. Bocchino made the decision to retire with the expectation that he would receive a pension of $2,762.80, which is smaller than his corrected pension of $3,192.76.

6. During oral argument, Bocchino's counsel asserted for the first time that Bocchino may have retired earlier had he known about the enhanced pension benefit. Since this claim was not presented before the District Court and does not appear elsewhere in the record, we have not taken it into account in our analysis.