**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1212
_____

RALPH W. BICKNELL,

Appellant

v.

LOCKHEED MARTIN GROUP BENEFITS PLAN;
THE PRUDENTIAL INSURANCE COMPANY OF AMERICA;
LOCKHEED MARTIN CORPORATION, as Plan Administrator


On Appeal from the United States District Court
for the District of New Jersey
(No. 2-08-cv-05987)
District Judge:  Hon. Susan D. Wigenton

Submitted January 27, 2011

Before:  FUENTES, CHAGARES, and ROTH, Circuit Judges.

(Filed February 10, 2011 )

_____

OPINION
_____


CHAGARES, Circuit Judge.

    In this action arising under the Employee Retirement Income Security Act

("ERISA"), Ralph Bicknell appeals the District Court's grant of summary judgment to

the defendants, upholding the denial of Bicknell's claim for dependent term life and accidental death and dismemberment insurance benefits following the death of his son. For the reasons set forth below, we will affirm.

I.

Because we write solely for the parties' benefit, we will only briefly recite the essential facts. At all times relevant to this action, Bicknell has been an employee of defendant Lockheed Martin Corporation ("Lockheed"). As such, he is a participant in the Lockheed Group Benefits Plan, an employer-sponsored plan provided pursuant to ERISA (the "Plan"). As a participant in the Plan, Bicknell had the option of purchasing term life and accidental death and dismemberment ("accidental death") insurance for his children, so long as they qualified as dependents. This insurance was provided by defendant Prudential Insurance Company of America ("Prudential").

Lockheed's Summary Plan Descriptions ("SPDs") summarize the term life and accidental death benefits available to eligible dependents under the Plan. The SPDs define eligible dependents as follows:

> Your children…of the following ages:
> - up to age 19 for unmarried children who are primarily dependent upon you for support
> - up to age 25 for children who are unmarried; are registered full-time students; and who depend upon you primarily for support
> - for children…who became incapable of self-sustaining employment because of mental retardation, serious mental illness, or physical sickness or injury…

Appendix ("App.") at 66. The SPD for accidental death insurance indicates that dependent coverage lasts until "your dependents no longer meet eligibility requirements."

2

App. at 56. The SPD for term life insurance similarly states that coverage ends when "your dependent loses dependent status according to this Plan." App. at 70. The SPDs also include conversion provisions, indicating that, upon a dependent becoming ineligible for coverage, the term life and accidental death plans can be converted to individual policies in the former dependent's name. In order to convert the policy, the employee must apply for the individual contract and pay the first premium within thirty one days after the dependent becomes ineligible. App. at 57, 71.[1] The SPDs further state that the "Plan's terms cannot be modified by written or oral statements to you from benefits administrators or other personnel." App. at 44, 63.

Via an online automated computer program, Bicknell attempted to enroll for dependent term life and accidental death insurance benefits on behalf of his son, Michael, to be effective January 1, 2006. Such online enrollment does not require the employee to enter the proposed dependent's birthday or to provide any proof of insurability. Rather, the online enrollment program presents the following statement to the employee each time the system is activated: "Claims will only be paid for dependents you have enrolled who meet the eligibility requirements for those plans. You are responsible for maintaining accurate information on the eligible dependents you want to cover." App. at

---

[1] The Group Life Contract which provides coverage to Lockheed's plan participants provides the following with regard to conversion: "The individual contract must be applied for and the first premium paid by the later of: (1) the thirty-first day after you cease to be insured for Dependent Optional Term Life Coverage with respect to the dependent; and (2) the fifteenth day after you have been given written notice of the conversion privilege. But, in no event may you convert the insurance to an individual contract if you do not apply for the contract and pay the first premium prior to the ninety-second day after you cease to be insured for Dependent Optional Term Life Coverage with respect to the dependent." App. at 217.

3

126. Notwithstanding the fact that Michael turned twenty-five on September 25, 2003, and was thus ineligible for coverage,[2] Bicknell listed Michael as a dependent for purposes of obtaining $25,000 in term life insurance coverage and $50,000 in accidental death insurance coverage.

Michael died in a car accident on August 3, 2006, at the age of twenty seven. Following Michael's death, Bicknell requested payment under the dependent term life and accidental death plans. On September 19, 2006, Prudential denied the claim because, as a result of his age, Michael was ineligible for coverage under the Plan. Prudential denied Bicknell's subsequent appeal on March 30, 2007.

On March 15, 2007, just prior to the denial of his appeal, Bicknell submitted a letter to various individuals and departments at both Prudential and Lockheed seeking reconsideration of the coverage denial and requesting copies of the SPDs. Neither Lockheed nor Prudential sent the requested plan documents, but they were readily available to Bicknell through Lockheed's internal computer network.

## II.

The District Court had jurisdiction pursuant to 29 U.S.C. § 1331, as this action arises out of the denial of insurance benefits under a Plan subject to ERISA, 29 U.S.C. §§ 1001, et seq. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.

"We subject the District Court's grant of summary judgment to plenary review, and we apply the same standard that the lower court should have applied." Smathers v.

---

[2] Bicknell does not allege that Michael suffered from any disability, which would have extended his eligibility beyond age twenty-five.

4

Multi-Tool, Inc., 298 F.3d 191, 194 (3d Cir. 2002) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000)). Under that standard, summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, we must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Farrell, 206 F.3d at 278.

We review for abuse of discretion the District Court's decision to decline to award damages for any failure of Lockheed to timely provide plan documents. Hennessy v. F.D.I.C., 58 F.3d 908, 924 (3d Cir. 1995).

## II.

In Count I of the complaint, asserted pursuant to § 502(a)(1)(B) of ERISA,[3] Bicknell seeks to recover dependent term life and accidental death benefits allegedly due to him under the terms of the Plan. The District Court denied relief, finding that the plain language of the plan documents and SPDs clearly rendered Michael ineligible for coverage at the time of his death. We agree.

"ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of

---

[3]An administrator's benefit eligibility determination is reviewed under an arbitrary and capricious standard if the plan grants the administrator discretionary authority to determine benefits or construe the terms of the plan. Jordan v. Federal Exp. Corp., 116 F.3d 1005, 1009 n.8 (3d Cir. 1997) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Because neither party has suggested on appeal that such a deferential standard should apply to this case, we exercise plenary review.

informing participants and beneficiaries of the terms of their plan and its benefits." In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig., 58 F.3d 896, 902 (3d Cir. 1995) (citation omitted).  The plan documents and SPDs that the defendants provided to Bicknell unambiguously advised him that dependent coverage ended when his son was no longer eligible and that his son was no longer eligible as of his twenty fifth birthday, at the latest.  Moreover, the online program that Bicknell used for enrollment warned him each time he activated the system that it was his responsibility to ensure the eligibility of dependents before enrolling for benefits on their behalf.

Nonetheless, Bicknell contends that the defendants should be estopped from asserting that Michael was ineligible for coverage because Lockheed employees assured him that if he was able to enroll a dependent online, the dependent was eligible for coverage.  Even assuming that Lockheed employees made such statements, however, we have previously made clear that "[t]he written terms of the plan documents control and cannot be modified or superseded by the employer's oral undertakings." Unisys, 58 F.3d at 902; see also Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1163 (3d Cir. 1990) (stating that extrinsic evidence may not be introduced to vary the express terms of a plan).[4]  And ERISA plan "participants have a duty to inform themselves of the details provided in their plans." Jordan v. Fed. Exp. Corp., 116 F.3d 1005, 1016 (3d Cir. 1997). Indeed, it is unreasonable for a plan participant to rely upon an employer's representation

---

[4]The SPD itself included such a warning to plan participants, stating that the "Plan's terms cannot be modified by written or oral statements to you from benefits administrators or other personnel.  Where conflict exists, the terms as set forth in the plan document govern."  App. at 63.

as to the contents of the Plan where the participant is in possession of a plan document containing express terms regarding the subject of the representation. Unisys, 58 F.3d at 907-08. This is especially true where, as here, the plan participant was alerted immediately prior to enrollment that he should first check the dependent eligibility requirements set forth in his plan documents.

In short, the defendants were bound by the terms of the plan in administering Bicknell's claim for dependent benefits. See 29 U.S.C. § 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties with respect to a plan…in accordance with the documents and instruments governing the plan…."). They could not have violated ERISA in denying such benefits, when the Plan plainly did not provide them.

Nonetheless, Bicknell additionally argues that he is entitled to convert the dependent coverage to an individual policy retroactively because Prudential failed to provide him with notice of the conversion privilege as required by the Plan. In support of this argument, Bicknell points not to the SPD, which makes no mention of notice, but to the Group Life Contract through which Prudential provides coverage to Lockheed's plan participants. With regard to conversion, that contract provides:

> The individual contract must be applied for and the first premium paid by the later of: (1) the thirty-first day after you cease to be insured for Dependent Optional Term Life Coverage with respect to the dependent; and (2) the fifteenth day after you have been given written notice of the conversion privilege. But, in no event may you convert the insurance to an individual contract if you do not apply for the contract and pay the first premium prior to the ninety-second day after you cease to be insured for Dependent Optional Term Life Coverage with respect to the dependent.

7

App. at 217. Focusing on the first sentence of clause (2), Bicknell contends that Prudential was required to notify him of the conversion privilege and that, no notice having been provided, the fifteen-day clock never began to run. Nothing about the relevant Plan language, however, affirmatively obligates Prudential to provide separate written notice of the conversion privilege. And the plan documents themselves, which alerted Bicknell to the fact that he needed to apply to convert coverage within a limited period of time after his dependent became ineligible, were the only notice required by the statute. Unisys, 58 F.3d at 902. Importantly, those plan documents make clear that under no circumstances can an employee convert dependent coverage to an individual plan more than ninety-one days after the dependent becomes ineligible as such. As we stated above, ERISA plan "participants have a duty to inform themselves of the details provided in their plans." Jordan, 116 F.3d at 1016. Having long missed the ninety-two day deadline, Bicknell now seeks to shift the burden of that duty to the defendants. This he cannot do. Accordingly, we must conclude that the District Court properly granted the defendants summary judgment on Count I of Bicknell's complaint.

In Count II, Bicknell alleges that Lockheed breached the fiduciary duties owed to him pursuant to 29 U.S.C. § 1104(a)(1). Bicknell correctly submits that plan administrators, as fiduciaries, must discharge their "duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). But in discharging these duties, they are also required to abide by the plan documents. 29 U.S.C. § 1104(a)(1)(D). Because Lockheed acted in accordance with the relevant plan

8

documents in denying Bicknell's claim, we cannot conclude that it breached any of its duties as a fiduciary.[5]

The District Court also correctly concluded that Count III of Bicknell's complaint, alleging a breach of the common law duty of good faith and fair dealing, was preempted by ERISA. "The question whether a certain state action is pre-empted by federal law is one of congressional intent. . . . We have observed in the past that the express pre-emption provisions of ERISA are deliberately expansive, and designed to establish [ERISA] plan regulation as exclusively a federal concern." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987) (quotation marks and brackets omitted). As such, a cause of action asserted under state law is pre-empted if it can be said to "relate to" an employee benefits plan. See id. at 47 (quotation omitted).[6] There is no question that Bicknell's claim for breach of the duty of good faith and fair dealing relates to his employee benefits plan, as it arises out of the allegedly improper processing of his claim for benefits thereunder. See id. at 48. Accordingly, we conclude that the District Court properly granted summary judgment to defendants on Count III.

---

[5] Bicknell's claim for breach of fiduciary duty fares no better if he intends to base it on the alleged statements of Lockheed employees to the effect that, so long as he was able to enroll a dependent online, the dependent was eligible for coverage. As stated above, the online system made clear that he was responsible for ensuring the eligibility of dependents according to the terms of the plan. And the "oral undertakings" of Lockheed employees cannot modify or supersede those terms. Unisys I, 58 F.3d at 902.

[6] The "Savings Clause," which exempts from preemption those state laws that regulate insurance, banking, or securities, see 29 U.S.C. § 1144(b)(2)(A), has no application to a claim for breach of the common law duty of good faith and fair dealing that is generally applicable to all contracts. Cf. Dedeaux, 481 U.S. at 49-51.

Bicknell next challenges the District Court's denial of his claim for purportedly "equitable" relief under 29 U.S.C. § 1132(a)(3). This "'catchall'" provision "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). "Where Congress otherwise has provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought not be provided." Ream v. Frey, 107 F.3d 147, 152 (3d Cir. 1997). Count V of Bicknell's complaint, though captioned a request for "equitable relief," in fact seeks nothing other than money. App. at 193 ("Count V-Equitable Relief Pursuant to 29 U.S.C. § 1132(a)(3)…. The Plaintiff is entitled to relief that includes, but is not limited to payment of $75,000 plus interest plus attorney's fees and costs.) And "[m]oney damages are, of course, the classic form of legal relief," Mertens v. Hewitt Assocs., 508 U.S. 248, 255 (1993), which is unavailable under § 1132(a)(3). Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002). Accordingly, we conclude that the District Court properly granted defendants' summary judgment on this claim.

Finally, as to Count IV, we cannot conclude that the District Court abused its discretion in declining to impose a penalty against Lockheed for failing to produce plan documents in response to Bicknell's March 15, 2007 request. The governing statute, 29 U.S.C. § 1132(c)(1), provides that a plan administrator who fails to comply with a plan participant's request for information[7] "may in the court's discretion be personally liable

---

[7] Such information includes plan documents. 29 U.S.C. § 1024(b)(4).

10

to such participant."  As indicated by the plain statutory language, whether a district court awards a plaintiff monetary damages under 29 U.S.C. § 1132(c)(1) is a matter entirely within its discretion.  Hennessy v. FDIC, 58 F.3d 908, 924 (3d Cir. 1995) (citation omitted).  Here, the District Court held that a penalty was unwarranted because Bicknell had made only one request, there was no resulting prejudice since Bicknell had ready access to the SPDs, and it did not appear that Lockheed had intentionally withheld the requested documents.  This holding was plainly not an abuse of the discretion that Congress has statutorily granted to the District Court pursuant to 29 U.S.C. § 1132(c)(1).[8]

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[8] Bicknell additionally sets forth a somewhat confusing argument that the District Court failed to identify clearly and establish the administrative record.  The administrative record in an ERISA action, however, simply consists of the evidence that was before the plan administrator when it made the decision being reviewed.  See Mitchell v. Eastman Kodak, 113 F.3d 433, 440 (3d Cir. 1997).  These documents were identified in the letter denying Bicknell's claim and were subsequently produced to Bicknell in the defendants' initial and amended disclosures.