**FEDERAL INSURANCE COMPANY,**
Plaintiff,

v.

**AMERICAN HOME ASSURANCE COMPANY, Defendant.**

Civil Action No. 1:14–CV–929–SCJ.

United States District Court,
N.D. Georgia,
Atlanta Division.

Signed April 30, 2015.

David A. Tartaglio, Gilbert D. Jensen, Musick, Peeler & Garrett, LLP, Los Angeles, CA, Jason D. Hergenroether, Matthew G. Moffett, Gray, Rust, St. Amand, Moffett & Brieske, LLP, Atlanta, GA, for Plaintiff.

David Cole Rhodes, Matthew P. Lazarus, Scrudder, Bass, Quillian, Horlock, Taylor & Lazarus LLP, Atlanta, GA, for Defendant.

## ORDER

STEVE C. JONES, District Judge.

This matter is before the court on Plaintiff's motion for summary judgment [28] and Defendant's motion for summary judgment [29].

## I. Background

### A. Procedural History and Facts

Plaintiff, Federal Insurance Company, filed the instant complaint against Defendant, American Home Assurance Company, on March 31, 2014, for contribution, indemnity, and declaratory relief to recover a payment it made to settle a claim made against Career Systems Development Corporation, a subsidiary of Owl Companies, an insured of both Federal and American Home.

The parties have stipulated to the facts which led to the instant controversy. Eugene Mathis was an employee of Career Systems Development until his separation on April 14, 2006. During his employment, Mr. Mathis was diagnosed with terminal cancer and decided to retire from Career Systems Development. While he was employed, Mr. Mathis had basic life insurance and supplemental life insurance policies as part of his employee benefit program.

At the time of his exit interview on April, 14, 2006, Career Systems Development contracted with Foxmar d/b/a Education and Training Resources to perform human resources functions, including conducting exit interviews of departing employees. The Career Systems Development employee manual in effect at the time Mr. Mathis had his exit interview stated that when an employee terminated his employment, the human resources manager was required to explain to the employee his rights to convert basic life insurance and supplemental life insurance from group policies to individual policies. The employee was then required to sign a Group Conversion Notice indicating that those rights had been explained to him.

Mr. Mathis died in June 2007. On July 2, 2007, Carol Mathis, Mr. Mathis's widow, wrote to Career Systems Development stating that Mr. Mathis had not been given information about converting his group life insurance to individual policies. All parties agree that at the time of his exit interview, Mr. Mathis was not advised of the right to convert group life insurance benefits to individual policies. The individual conducting the exit interview stated that because they were so focused on his medical needs and health insurance, they did not go over the life insurance conversion rights. Because Mr. Mathis did not convert his group policies to individual policies, the group life insurance lapsed on or about July 6, 2006, approximately one year before Mr. Mathis died.

During his employment, Mr. Mathis had $35,000 in basic life insurance and $105,000 in supplemental life insurance. Mr. Mathis's primary beneficiary for basic and supplemental life insurance was (Mary) Carol Mathis, his spouse. On October 10, 2007, ING, the insurer for Career Systems Development's group life insurance declined a request to convert Mr. Mathis's group life

insurance to individual policies. ING declined to pay any life insurance benefits to Mrs. Mathis.

Mrs. Mathis then wrote to Career Systems Development seeking Mr. Mathis's life insurance benefits. Mrs. Mathis's claim was tendered to both Federal and American Home. Career Systems Development reached a $140,000 settlement with Mrs. Mathis. Federal funded the settlement and then filed the instant lawsuit seeking reimbursement from American Home.

American Home issued a Commercial General Liability insurance policy to Owl Companies for the period of October 1, 2006 to October 1, 2007. It issued another policy for the October 1, 2007 to October 1, 2008 period. As a subsidiary of Owl Companies, Career Systems Development was a named insured under both the 2006 and 2007 policies. The American Home policies each had Employee Benefits Liability Endorsement liability limits of $1,000,000 for each wrongful act.

The American Home Employee Benefits Liability Endorsement states coverage will be provided for "those sums which the Insured shall become legally obligated to pay as damages because of any 'claim' made against the Insured due to any 'Wrongful act' of the Insured ... in the 'administration' of the 'employee benefit program' of the Insured." See Docket Entry [27], Stipulated Facts, ¶ 6. "Wrongful act" is defined inter alia to include any negligent act in "[g]iving counsel to employees with respect to the Employee benefit program" which is deemed to include "group life insurance." Id., ¶ 8.

The American Home Employee Benefits Liability Endorsement also contains an ERISA exclusion which provides that the Endorsement does not apply to:

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

Id., ¶ 7.

Federal also issued a Commercial General Liability Policy to Owl Companies for the period of October 1, 2006 to October 1, 2007. Career Development Systems is a named insured under the Fiduciary Liability Coverage Section of the Federal Policy. Federal's policy does not contain an ERISA exclusion, but does contain an "Other Insurance" clause that provides Federal's coverage is in excess of other valid and collectible insurance. The American Home policies do not contain any "Other Insurance" clauses.

**B. Contentions**

Federal argues that the Employee Benefits Liability Endorsement in the American Home policy covers Career Systems Development's failure to advise Mr. Mathis of his conversion rights under the group life insurance policy. Federal contends Mr. Mathis's exit interview constitutes giving counsel to an employee about his employee benefit program but that the source of the duty to advise Mr. Mathis of his conversion rights arises out of the employee manual and not ERISA fiduciary obligations. Federal avers that during the exit interview, Career Systems Development acted in its capacity as an employer and not as an ERISA fiduciary. As such, Federal contends, the claim is not barred from coverage by the ERISA exclusion in American Home's policy.

American Home responds that the ERISA exclusion from its Employee Benefits Liability endorsement bars coverage of Mrs. Mathis's claim. American Home argues that Career Development Systems was aware of the fact that Mr. Mathis was separating from employment because of his terminal cancer diagnosis. Given that

Career Development Systems knew of his circumstances, American Home contends it had a fiduciary duty to provide Mr. Mathis complete and accurate information about his life insurance conversion rights.

## II. Discussion

As the court indicated above, the parties agree on the relevant facts, including the fact that Career Systems Development was aware of Mr. Mathis's medical diagnosis and reason for separation at the time of the exit interview but failed to properly advise Mr. Mathis of his right to convert the group life insurance policies into individual policies. Mrs. Mathis then made a claim based on the failure to advise for which Federal paid $140,000 on behalf of Career Systems Development. The parties also agree that if the court rejects American Home's argument that the ERISA exclusion in its policy applies and that both Federal's and American Home's policies are found by the court to provide coverage for Career System Development's failure to advise Mr. Mathis of his conversion rights, the American Home policy would provide the primary coverage due to Federal's "Other Insurance" clause.

The court must determine, therefore, whether the ERISA exclusion contained in the American Home policy bars coverage of Mrs. Mathis's claim under that policy. The language of the ERISA exclusion makes clear that it does not apply to all ERISA matters, but rather only excludes "[d]amages for which any insured is liable *because of liability imposed on a fiduciary*" under ERISA.

The parties disagree as to whether Career Systems Development was acting in a fiduciary capacity when it conducted Mr. Mathis's exit interview. ERISA states an individual or entity is a "fiduciary" with respect to a plan:

to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan....

29 U.S.C. § 1002(21)(A). While Federal does not appear to deny that Career Systems Development could at times be considered a "fiduciary;" it does contend that Career Systems Development was not acting in a "fiduciary" capacity with respect to the provision of the notice of conversion rights which it argues is a ministerial duty.

In *Eddy v. Colonial Life Insurance Company of America,* 919 F.2d 747 (D.C.Cir.1990), the court addressed the scope of fiduciary obligations in the context of providing notice of conversion rights as to both health and life insurance policies. There, Eddy, the plaintiff, was an employee in a travel agency. He was diagnosed as HIV-positive and given one year to live. During the course of his treatment, Eddy's employer terminated its health insurance coverage which had been offered through Colonial Life/Chubb. With surgery already scheduled for a date after the termination, Eddy called Colonial Life to ask about his conversion rights under the policy. He was told he did not have the right to convert the policy and, therefore, Eddy postponed his surgery. As later witnesses testified, however, Eddy did, in fact, have the right to convert his policy from group to individual even though his employer was terminating the policy. If he had converted his policy, he would have retained his health and life insurance benefits.

Eddy then filed suit against Colonial Life/Chubb alleging the insurer had breached its fiduciary duty under ERISA. The district court ruled in favor of the insurance company finding that while Eddy could not have "converted" his policy, he could have "continued" his coverage under state and federal law. But Eddy had asked only about conversion rights, and not continuation of the policy. Thus, the district court found it was not a breach for the insurance company to fail to explain his continuation rights to Eddy.

On appeal, the court found that "the standard of care articulated by the trial court was too narrow" and held that "a fiduciary in Chubb's position has a duty upon inquiry to convey to a lay beneficiary like Eddy correct and complete material information about his status and options when a group policy is cancelled." *Id.* at 750.

Significantly, the *Eddy* court held that "the duties of an ERISA fiduciary' are not limited by that statute's express provisions but instead include duties derived from common law trust principles." *Id.* Rather than explicitly listing all the duties of an ERISA fiduciary, *Eddy* notes, Congress "invoked the common law of trusts to define the general scope of their ... responsibility.'" *Id.* (quoting *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985)).

As *Eddy* sets forth, the "duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts" even before ERISA was enacted. *Id.* A trustee is "under a duty to communicate to the beneficiary material facts affecting the interests of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing

with third parties." *Id.* (quoting Restatement (Second) of Trusts § 173).

The court further noted that a fiduciary's duty, however, is not discharged simply by the issuance and dissemination of these documents and notices. Instead, that duty carries through in all of the fiduciary's dealings with beneficiaries; in general, "a fiduciary may not materially mislead those to whom the duties of loyalty and prudence ... are owed." ... "A beneficiary, about to plunge into a ruinous course of dealing, may be betrayed by silence as well as by the spoken word."
*Id.* (citations omitted).

The court found that once Eddy called Colonial Life and informed it of his circumstances and the fact that his coverage was being terminated, Colonial Life "bore a fiduciary duty to convey correct and complete information material to Eddy's circumstance." *Id.* at 751. This included information about the "applicability of 'continuation' provisions, the availability of 'conversion' options and the procedures for converting Eddy's health and life insurance coverage." *Id.* "Once Eddy presented his predicament, Colonial Life was required to do more than simply *not misinform,* Colonial Life also had an affirmative obligation to *inform*—to provide complete and correct material information on Eddy's status and options." *Id.* (emphasis in original). Having failed to do so, the court found that Colonial Life breached its fiduciary duty to Eddy.

Plaintiff argues that *Eddy's* holding should not apply to the instant case because there is no requirement under ERISA that an employer provide notice to an employee about his conversion rights for life insurance policies, as opposed to health insurance. *See, e.g., Walker v. Federal Express Corp.*, 492 Fed.Appx. 559, 565 (6th Cir.2012) ("ERISA does not contain

any provision that requires a plan administrator to provide notice to plan participants other than a summary plan description, and information" of certain benefits which does not include life insurance conversion rights); *Bicknell v. Lockheed Martin Group Benefits Plan*, 410 Fed.Appx. 570, 575 (3d. Cir.2011) (no obligation in plan documents to provide notice of life insurance conversion rights and plan documents accurately described rights); *Prouty v. The Hartford Life Acc. Ins. Co.*, 997 F.Supp.2d · 85, 90 (D.Mass.2014) (no requirement that summary plan document contain conversion rights, but even so, plaintiff's plan summary did provide adequate and accurate information).

■ While Plaintiff is correct that ERISA does not require such notice, that is not relevant under the holding of *Eddy* which states that the duties of an ERISA fiduciary are not limited to those requirements expressly set forth in the statute. The issue is not whether Career Systems Development had to notify participants of life insurance conversion rights in the summary plan description or elsewhere. The critical distinction here is the fact that Career Systems Development had additional specific information about Mr. Mathis that put them on notice that he was not a garden-variety employee separating his employment from the company. The company, instead, was aware of specific facts related to Mr. Mathis's circumstances which made the issue of conversion rights significant to him and, thus, invoked the company's fiduciary duties. There is no indication in the facts of *Walker, Bicknell,* or *Prouty* that the plan administrator had any knowledge of special circumstances with respect to the individuals in those cases.[1]

■ While ERISA might not mandate that a company provide notice in the summary plan description of life insurance conversion privileges, that does not relieve an ERISA fiduciary of its duties to disclose material information and to inform a beneficiary of material facts when it knows the beneficiary is not aware of them. *See Brenner v. Metropolitan Life Ins. Co.*, Civil Action No. 11–12096, 2015 WL 1307394 (D.Mass. Mar. 23, 2015) (holding that ordinarily "administrative" duties such as advising participants of conversion rights are not treated as fiduciary' functions, but fiduciary duty might nonetheless be owed where, for example, fiduciary was aware that insured might be incapacitated).[2]

For the foregoing reasons, the court finds Career Systems Development was acting in a fiduciary capacity when it failed to provide Mr. Mathis with notice of his

---

1. Had the company not been aware of Mr. Mathis's terminal illness and had not itself recognized the need for specialized planning, at least with respect to his health insurance policies, the court might reach a different conclusion about the scope of the employer's fiduciary duties. *See, e.g., Lucas v. Steel King Industries, Inc.*, 32 F.Supp.3d 994, 1004–06 (W.D.Wisc.2014) (discussing range of fiduciary duties as to individual participants versus plan participants).

2. Finally, the court notes that the extent of information an employer needs to provide to an employee might be impacted by language in the plan documents. Plaintiff, here, however, has not provided to the court any information about what was contained in the summary plan description or the plan documents themselves. Plaintiff also did not provide the court any contract language that would describe the relationship between the employer and the human resources company with whom it contracted to conduct the exit interview. As such, the court cannot make any determination as to whether the plan documents accurately conveyed information as to life insurance policy conversion or whether the individual conducting the exit interview might have been operating in a ministerial capacity. *See generally Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 472 (7th Cir.2010).

conversion rights as to his life insurance policy. As such, the ERISA exclusion in the American Home policy applies and the only coverage available for Mrs. Mathis's claim is under the Federal policy. The court DENIES Plaintiffs motion for summary judgment [28] and GRANTS Defendant's motion for summary judgment [29].

## III. Conclusion

The court DENIES Plaintiffs motion for summary judgment [28] and GRANTS Defendant's motion for summary judgment [29].

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.